JAMES F. MEERS and Another, Appellants, v. MUNSCH-PROTZMANN Co., INC., Respondent.

First Department, July 6, 1926.

Landlord and tenant — action to restrain defendant from interfering with plaintiffs' enjoyment of space in defendant's store — defendant's predecessor made five-year agreement permitting plaintiffs to operate soda fountain in its store, which agreement provided that plaintiffs should pay certain percentage of gross receipts — said agreement constitutes valid lease — agreement does not lack mutuality — injunction pendente lite granted.

In an action to restrain the defendant from interfering with the plaintiffs' enjoyment of space in its store, and from interfering with the plaintiffs in the operation of a soda fountain therein, it appears that the defendant's predecessor in title granted to the plaintiffs permission to operate a soda fountain in the store in question, and in a certain definite part thereof, for a period of five years, and that the agreement fixed the amount of consideration to be paid at a certain percentage of the gross receipts of the soda fountain. The defense that the written agreement was a mere license cannot be sustained, for it has all the elements of a valid, enforcible, five-year lease, since it confers upon the plaintiffs the right upon an agreed rental to occupy a fixed space in defendant's store for a definite time, and for a definite purpose, and since it appears from the agreement itself that the parties who made it intended it to operate as a lease, for it was stated in the agreement " This lease is to be for five years from the time when the fountain opens for business."

The agreement does not lack mutuality because it does not contain express reciprocal promises, for the attending circumstances and the acts of the parties thereunder give a practical construction thereto, which permits the implication of reciprocal promises and obligations.

The plaintiffs are entitled to an injunction pendente lite to restrain the defendant from evicting them from their store, for otherwise an irreparable injury will be done to the plaintiffs before the action can be tried.

APPEAL by the plaintiffs, James F. Meers and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of February, 1926, denying plaintiffs' application for a temporary injunction.

The injunction was sought to restrain the defendant from " (a) Interfering with the plaintiffs in the quiet enjoyment of their business of selling soda, ice cream, sundaes, sandwiches, cake, pastry and soft drinks, and in operating a soda fountain in the store of defendant at 46th Street and Vanderbilt Avenue, New York City; (b) removing any installation or equipment or any part thereof of the plaintiffs in the premises of Munsch-Protzmann Co., Inc., at 46th Street and Vanderbilt Avenue, New York City; (c) from the further commission of any act whatsoever in its attempt

to disturb plaintiffs in the quiet and peaceable enjoyment of said premises."

*Louis C. Haggerty* of counsel [*Smyth, Haggerty, King & Corcoran,* attorneys], for the appellants.

*Joseph Schottland,* for the respondent.

WAGNER, J.    The defendant conducts a drugstore at the northwest corner of Vanderbilt avenue and Forty-sixth street, New York city. On or about August 29, 1923, a written agreement was entered into between plaintiffs and defendant as follows:

" Permission is hereby given to Messrs. James F. Meers and Justin C. O'Brien or any corporation which they may organize to operate a soda fountain in our store at 46th Street and Vanderbilt Avenue, New York City, for the purpose of selling soda, ice cream, sundaes, sandwiches, cake, pastry and soft drinks.

" Meers and O'Brien or the corporation shall have the privilege of buying from Munsch-Protzmann & Co., any stock or manufactured merchandise or pharmaceuticals used or dispensed at the said soda fountain at ten (10%) percent above the wholesale cost. For example, bromo seltzer, castor oil, headache powders, aromatic spirits of ammonia.

" The business and conduct of the corporation is to correspond with our high standard.

" This lease is to be for five years from the time when the fountain opens for business.    Munsch-Protzmann & Co. is to receive ten percent of the gross receipts for the first two years and fifteen percent of gross receipts for the next three years.

" In the event that Munsch-Protzmann & Co. should obtain an additional five years to their lease on the store, then in that event Munsch-Protzmann & Co. agree to extend to Messrs. Meers and O'Brien an option to renew their lease of the soda fountain space for an additional five years on the same basis as the last three years mentioned above; *i. e.,* Fifteen (15%) percent. of the gross receipts and the same purchasing privilege of pharmaceuticals, etc.

" The size and location of the soda fountain and equipment is to be in accordance with drawing No. 3322 of the American Soda Fountain Co., dated July 2, 1923, which has been initialed and approved by Munsch-Protzmann & Co. and Meers and O'Brien."

The question is here presented whether by this agreement and the subsequent conduct of the parties the plaintiffs acquired any rights which a court of equity will protect.

The agreement contains the essential elements of a lease, namely:

1. A permission was granted to the plaintiffs by defendant to occupy the premises.

2. The plaintiffs were subordinated to the grantor's title.

3. There was a reversion to the grantor of the interests granted pertaining to the premises.

4. The space to be occupied by the plaintiffs was specified in the agreement to be in accordance with a certain drawing of the American Soda Fountain Company, dated July 2, 1923, which was initialed and approved by both parties to the agreement.

5. Rent was reserved to the grantor to be computed upon the basis of the gross receipts.

6. The agreement was in writing, signed by the parties and hence is valid within the Statute of Frauds. (Real Prop. Law, § 242.)

It is our view that the agreement, to use the language of section 232 of the Real Property Law (as amd. by Laws of 1918, chap. 303), was one " for the occupation of real estate in the city of New York." It is manifest that it was intended by the agreement to confer upon the plaintiffs something more than a bare license. A license in respect to real property may be defined to be an authority to do a particular act or series of acts upon another's land which would amount to a trespass without such permission. (*Clifford* v. *O' Neill,* 12 App. Div. 17.) Clearly, the agreement under consideration grants more than that. It confers upon the plaintiffs the right upon an agreed rental to occupy a fixed space in defendant's drugstore, to install a soda fountain and to sell soda, ice cream, sandwiches, etc. That the parties intended to create a lease is obvious, for the term " lease " is used twice in the writing to characterize the instrument.

We ascertain the intention and purpose of the parties to an agreement and the nature of the rights created or granted by a reasonable construction of the language used and the subsequent acts of the parties thereunder.

The rule is well stated by Mr. Justice HATCH, in *Bagg* v. *Robinson* (12 Misc. 299, 304, 305):

" But it seems to be now pretty firmly established that mere words will not govern, but the court will look at the nature of the right rather than the name by which it is called. And while in the present case the language used in the lease granting the right to sell, in a strict sense, are words of license, yet the court is not bound by the technical meaning of the words, and will look at the end sought to be accomplished by the instrument, in the light of surrounding circumstances force being given to practical construction of the instrument by acts of the parties, where such

construction does not do violence to its terms. *Greenwood L., etc., Co.* v. *New York & Greenwood L. R. R. Co.,* 134 N. Y. 435; *Hathaway* v. *Power,* 6 Hill, 456; *Stone* v. *Clark,* 1 Metc. (Mass.) 378; *Lanman* v. *Crooker,* 97 Ind. 163.

" The rule is also recognized in *Wiseman* v. *Lucksinger,* 84 N. Y. 41, that where there is an express agreement, or conduct, either actively or by acquiescence, which has led the party to make valuable improvements or erect permanent structures or do other things which would make the assertion of the legal title operate as a fraud upon the equitable right, then an easement will be inferred. And this is true even though the original right was revocable as a license, if the licensee had expended money on the strength of it. *Greenwood L., etc., Co.* v. *New York & Greenwood L. R. R. Co.,* 134 N. Y. 440."

The plaintiffs, in reliance upon the legal efficacy of the agreement, installed upon the space allotted to them in defendant's store, a soda water fountain and its necessary appurtenances, and continued for over two years after August 29, 1923, to conduct their fountain business without any objection or interruption by defendant.

The moving papers allege, and it is not contradicted, that thereafter the stock interests of the defendant corporation were sold. The new owner at once made it manifest that he was dissatisfied with the terms of the agreement. Efforts were made by officers of the defendant corporation to have plaintiffs discontinue their soda fountain business. The defendant removed one of the plaintiffs' counters without plaintiffs' consent, and threats were made to remove the fountain.

The opposing affidavit of the president of defendant contains no denial of such actions. On the contrary, his affidavit sets forth that a notice to vacate the premises was served upon plaintiffs and that steps would be taken to enforce defendant's rights. He contends that plaintiffs are mere licensees under a revocable license and can be removed at will. Obviously, if defendant carries out its threatened action, irreparable injury will be done plaintiffs. To maintain the *status quo* until the trial of the action upon the merits, the plaintiffs seek an injunction to restrain the commission of the threatened acts. The defendant argues that no injunction *pendente lite* should issue for the reason that the agreement which is the basis of the suit is void and unenforcible for lack of mutuality, since thereunder plaintiffs do not specifically agree to enter and remain in occupation of the located space for any period of time.

An agreement does not of necessity lack mutuality because it does not contain express reciprocal promises. The agreement, the

surrounding circumstances and the acts of the parties thereunder giving practical construction thereto, may reasonably permit the implication of reciprocal promises and obligations.

It is our opinion that the agreement under consideration, though imperfectly expressed, contains mutual obligations. It is a valid lease. The plaintiffs impliedly bound themselves to install and operate the soda fountain within a reasonable time from date of the execution of the lease.

That a reciprocal promise should be implied where permitted by a fair and reasonable construction of the agreement is the rule approved by the Court of Appeals in *Wood* v. *Duff-Gordon* (222 N. Y. 88). In that case the court had under consideration a contract in which the plaintiff had not made any promise in express terms to perform on his part, and it was accordingly urged that the action was based on a *nudum pactum.* Judge CARDOZO, writing for the court, stated: "The defendant insists, however, that it lacks the elements of a contract. She says that the plaintiff does not bind himself to anything. It is true that he does not promise in so many words that he will use reasonable efforts to place the defendant's indorsements and market her designs. We think, however, that such a promise is fairly to be implied. The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day. A promise may be lacking, and yet the whole writing may be ' instinct with an obligation,' imperfectly expressed * * *. If that is so, there is a contract."

Here it was clearly within the contemplation of the parties that the defendant was to grant and plaintiffs were obligated impliedly to enter and occupy a definite space of the drugstore of the grantor for a definite period at a fixed rental with a conditional right of renewal.

The plaintiffs have acquired a right to possession under a written lease which a court of equity should protect and preserve from irreparable injury. The injunction *pendente lite* applied for in the court below should have been granted.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion for an injunction *pendente lite* granted, with ten dollars costs.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.