COLUMBUS COSMETIC CORP., Appellant, *v.* SHOPPERS FAIR OF SOUTH BEND, INC., et al., Respondents.

First Department, November 23, 1966.

*Howard M. Squadron* of counsel (*Lawrence H. Rogovin* with him on the brief; *Squadron & Plesent,* attorneys), for appellant.

*Anthony J. D'Auria* of counsel (*Herbert J. Deitz* with him on the brief; *Cole & Deitz,* attorneys), for respondents.

WITMER, J. The plaintiff appeals from an order made at Special Term denying its application for a preliminary injunction under CPLR 6301. The denial was upon the ground that the plaintiff had failed to make a prima facie showing that it would be damaged by the proposed acts of the defendants which the plaintiff seeks to enjoin, and in any event that the plaintiff has an adequate remedy at law. We reach a different conclusion.

It appears that the plaintiff and one of the defendants, Shoppers Fair of South Bend, Inc. (herein referred to as the defendant) entered into an agreement whereby the defendant granted to the plaintiff a so-called exclusive license to occupy a specified 1,500 square feet of space in the defendant's department store for the purpose of selling drugs, cosmetics, etc. The agreement became operative about February 1, 1960, to extend for a period of 5 years thereafter, with the privilege to the plaintiff upon notice to the defendant of one year prior to the expiration of

the original contract period to renew for an additional 5 years, and with the right for a similar renewal for a further 5-year period after the first renewal. The parties are now in the first renewal period. The plaintiff was given the right to terminate the agreement by giving 60 days' written notice to the defendant. The defendant was given the right after one year to terminate the agreement by giving written notice thereof to the plaintiff at least 60 days before April in any year of the agreement, '' but only if '' plaintiff's sales during any lease year immediately preceding such notice are not more than 4% of the annual net sales of defendant and all its licensees (excluding food department).

The plaintiff was to furnish its own fixtures and employees, but it was provided that the latter must abide by the rules defendant fixes for its employees, and that the plaintiff may operate its department only during defendant's store hours. The defendant reserved the right to enter the area granted to the plaintiff to examine its method of doing business, and to make repairs and to install pipes and conduits, etc., useful to it in its business, without unnecessary interference with the plaintiff.

It was provided that all of plaintiff's sales would be paid into defendant's cash registers, and weekly the defendant would account therefor to the plaintiff and pay the same over to the plaintiff except it would retain 5% thereof for itself, and except that the plaintiff agreed to pay a minimum to the defendant of $6,750 '' for each lease year ''.

Effective January 1, 1963 the agreement was modified by the defendant granting to the plaintiff 500 square feet additional floor space adjacent to the space previously granted to the plaintiff; and in return it was agreed that the plaintiff should retain 7% of the first $149,000 of plaintiff's sales. This amounted to an increased compensation to the defendant of $2,980 per year, provided plaintiff's annual sales equalled $149,000. In other respects the prior agreement was confirmed.

On August 8, 1966 the defendant notified the plaintiff that the defendant was '' replanning and fixturing '' its store so as to move plaintiff's area and reduce its size about 600 square feet. The plaintiff instituted action against the defendant to enjoin such changes, and by order to show cause moved at Special Term for a preliminary injunction; and it is from the denial of that motion that the plaintiff appeals.

The defendant resists the appeal with the contention that the contract gives the plaintiff only a license to operate in defendant's store, that the plaintiff is not entitled to any specific

location or amount of space, and hence is not damaged; but even if it is damaged, defendant claims the plaintiff has an adequate remedy at law.

It is true that the usual license or concessionaire agreement does not amount to a lease or give the licensee a right to an injunction (*Senrow Concessions* v. *Shelton Props.*, 10 N Y 2d 320; *Lordi* v. *County of Nassau*, 20 A D 2d 658, affd. 14 N Y 2d 699; *Layton* v. *Namm & Sons*, 275 App. Div. 246, affd. 302 N. Y. 720); and if the licensee has been damaged, he may have recovery at law (*Dickinson* v. *Hart*, 142 N. Y. 183).

It is clear that the parties wished to avoid labeling the contract a lease, and expressly named it a license agreement. Nevertheless, the nature of an agreement must be determined by reference to its provisions and not merely by its name. (*Lordi* v. *County of Nassau, supra,* p. 659; *Meers* v. *Munsch-Protzmann Co.*, 217 App. Div. 541.) In view of the provisions of the agreement before us specifying the space granted to the plaintiff and providing for guaranteed minimum annual rent or compensation to the defendant for the privileges granted, we are not prepared to hold upon the record before us that the plaintiff had no more than a license. (See *Meers* v. *Munsch-Protzmann Co., supra.*)

In our view however, the plaintiff's case does not depend upon whether the agreement is a lease or a license, but rather, upon the nature of the contract rights granted to the plaintiff. This was recognized in the opinion in *Layton* v. *Namm & Sons* (*supra,* pp. 249–250) in discussing the *Meers* case (*supra*); and see American Jurisprudence (vol. 33, Licenses, § 110).

The contract at issue gave to the defendant the right to terminate it on 60 days' notice at the end of any year in which plaintiff's sales should be less than 4% of the sales of defendant and its licensees. The plaintiff asserts that reducing its space and moving the area of its department will severely affect its sales, so that defendant's action puts the plaintiff in jeopardy of having the agreement terminated by the unilateral act of the defendant. Moreover, the plaintiff is paying about $3,000 annually for the extra 500 square feet of space which it was granted on January 1, 1963, and the defendant offers no adjustment therefor. Presumably however, an adequate remedy at law could be had with respect to the latter item. In *Dailey* v. *City of New York* (170 App. Div. 267, 274, affd. 218 N. Y. 665) this court said: "In order to deny one the relief which a court of equity can give, it is not in all cases sufficient that there be a remedy at law. The remedy must be plain and adequate, and as certain, prompt, complete and efficient to attain the ends of

justice and its prompt administration as the remedy in equity.''

Whether the plaintiff's sales will be adversely affected by defendant's proposed changes presents a fact question which cannot be determined on this record. If upon a plenary trial herein the plaintiff proves the claims asserted in its complaint, then it will have established that it has no adequate remedy at law and that it is entitled to equitable relief. Hence its complaint states a good cause of action for equitable relief. It is much too late to contend that contract rights not related to real estate may not be protected by a court of equity. In each such case where no adequate remedy at law exists, the equitable powers of the court may be invoked (*Standard Fashion Co.* v. *Siegel-Cooper Co.*, 157 N. Y. 60; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Green Is. Ice Co.* v. *Norton*, 105 App. Div. 331, affd. 189 N. Y. 529; *Drukill Co.* v. *Alpha Alpina, S. A.*, 223 N. Y. S. 2d 51; and see *Plastray Corp.* v. *Cole*, 324 Mich. 433; *Eastwood* v. *Eastwood*, 167 Kan. 471; *Herpolsheimer* v. *Funke*, 95 N.W. 687 [Neb.]; 35 Mich. L. Rev., note p. 95 '' Contracts-Agreements For Leasing Departments and Retail Stores ''; Ann. 8 ALR 2d 1208, 1216; 28 Am. Jur., Injunctions, § 85 *et seq.*; and 5 Williston, Contracts [Rev. ed.], §§ 1445, 1450B and 1451).

At this threshold stage of the matter of the changes which the defendant proposed to make, granting the preliminary injunction does not amount to affording the plaintiff all the relief it seeks in the complaint, which, of course, we may not do (*Barricini, Inc.* v. *Barrinici Shoes*, 1 A D 2d 905); but instead, it amounts to a deferment of the intended alleged breach of contract by the defendant pending a determination of the rights of the parties, which the cases above cited recognize as the appropriate function of a preliminary injunction.

Accordingly, the order appealed from should be reversed, on the law, on the facts and in the exercise of discretion, with costs and disbursements to abide the event, and the application for a preliminary injunction granted upon the plaintiff's filing a suitable bond. The defendant having stipulated upon the argument its willingness to serve its answer and to proceed to trial promptly, and the plaintiff having joined in the stipulation, an early trial of the issues presented is directed. Settle order.

Botein, P. J., Breitel, McNally and Steuer, JJ., concur.

Order, entered on October 24, 1966, unanimously reversed, on the law, on the facts and in the exercise of discretion, with $30 costs and disbursements to abide the event, and the application for a preliminary injunction granted upon the plaintiff's filing a suitable bond. The defendant having stipulated upon the argu-

396

ment its willingness to serve its answer and to proceed to trial promptly, and the plaintiff having joined in the stipulation, an early trial of the issue presented is directed. Settle order on notice.