73200. NATIONAL CANDY WHOLESALERS, INC.
v. CHIPURNOI, INC.
(350 SE2d 303)

BIRDSONG, Presiding Judge.

Indemnity Agreement — Public Policy. National Candy Wholesalers Association, Inc. (NCW) leased a portion of the Atlanta Civic Center from the City of Atlanta for use as a trade show. In turn, NCW made available portions of the leased area to various manufacturers and purveyors of candy products and services to show and advertise their products and services. One of the permitees was Chipurnoi. While on the leased premises, an employee of Chipurnoi, Arline Cusack, fell into a utility service trench and suffered injuries. Ms. Cusack brought suit against the City of Atlanta, the utility servicer, an exposition servicing company and NCW as the lessor. NCW filed a third-party complaint against Chipurnoi asserting indemnification by way of contract. Chipurnoi moved for dismissal of the third-party pleadings on the ground that on the face of the pleadings the indemnification clause of the contract was void as against public policy. The trial court granted the motion to dismiss the third-party action filed by NCW against Chipurnoi (but considered it as a summary judgment). This appeal is filed by NCW solely in relation to the dismissal of the third-party action. *Held*:

Paragraph 7 of the Contract for Booth Space entered into between NCW and Chipurnoi in relevant part provides "NCWA . . . or any officer, director, agent or employee thereof will not be responsible for the safety of the persons or property of the exhibitor, his agents or employees from injury . . . and will be indemnified and saved harmless by the exhibitor from *any claim* by any of the exhibitor's agents or employees for injury, loss or damage." (Emphasis supplied.)

OCGA § 13-8-2 in pertinent part provides: "(a) A contract which is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to: (b) A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building . . . purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons . . . caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable. . . ."

NCW complains the trial court erred in concluding the indemnification agreement in the Booth Space Contract violated the provisions of OCGA § 13-8-2 (b). It is NCW's argument that § 13-8-2 (b) deals exclusively with construction contracts and matters related to construction whereas the Booth Space Contract dealt with or was more closely related to rendering services or something similar as opposed to a lease or sublease of a private or commercial rental. NCW continues its argument contending that in order for the public policy prohibition to attach, there are two threshold conditions that must be met (1) that the agreement pertain to the maintenance or construction of a building; and (2) that the indemnity clause purports to indemnify the promisee against the consequences of his sole negligence. See *Smith v. Seaboard Coast Line R. Co.*, 639 F2d 1235 (5th Cir. 1981). (But see *Morgan v. Westinghouse Elec. Corp.*, 579 FSupp. 867.) If NCW's argument is correct, then the indemnification agreement is valid and should be enforced because a contractual waiver of liability for simple negligence is valid in the absence of a violation of public policy. *Carrion v. Smokey, Inc.*, 164 Ga. App. 790 (298 SE2d 584).

NCW also extends its argument beyond the contention that a construction contract is not involved. It further argues the indemnification agreement in the Booth Space Contract does not seek to expressly indemnify NCW from its sole negligence, one of the requisite grounds for establishing a public policy restraint. Thus NCW contends that by construing the instant contractual agreement as one dealing with maintenance of a building and by extending it to the express and sole negligence of the indemnitee, the trial court assert-

edly has expanded the meaning and intent of § 13-8-2 (b) beyond what was intended by the General Assembly in its enactment.

We are not persuaded by these arguments. Under any characterization, NCW rented or leased a portion of the Civic Center for use as an exhibition hall. As the tenant of the Civic Center, it then assigned a portion of its temporary leasehold to a concessionaire, Chipurnoi. Thus, we find no strained logic to conclude that the Booth Space Contract in legal effect is a permit by a tenant to a concessionaire for use of real estate. See *Senrow Concessions v. Shelton Properties*, 178 NE2d 726 (10 NY2d 320, 222 NYS2d 329); *Meers v. Munsch-Protzmann Co.*, 217 NYS 256; *Columbus Cosmetic Corp. v. Shoppers Fair of So. Bend*, 275 NYS2d 135, 138.

Notwithstanding the reasoning and logic of the *Smith* case and the New York cases above cited, we are constrained to observe that they are decisions emanating from jurisdictions other than Georgia. While we will consider decisions construing Georgia law rendered by foreign jurisdictions and will accept enlightened reasoning which impacts upon and is persuasive and consistent with the law of this state as interpreted by the courts of this state or announced by the legislative authority of this state, we are not bound by such decisions and particularly if such decisions are inconsistent with the interpretive decisions of the courts of this state.

Our Supreme Court has rendered its own interpretation of the meaning and effect of the predecessor statute to OCGA § 13-8-2 (b) in a case not involving a building construction or building maintenance contract. The court was considering the provisions of Code Ann. § 20-504 which is for all practical purposes worded in identical language as its successor, OCGA § 13-8-2 (b). In the case of *Country Club Apts. v. Scott*, 246 Ga. 443, 444 (271 SE2d 841), it was expressly held: "that this statute was applicable to exculpatory clauses in lease contracts was specifically established by this court in *Frazer v. City of Albany*, 245 Ga. 399 (2) (265 SE2d 581)." Further, the Supreme Court in the *Country Club Apts.* case, supra at p. 444, cited with approval, that a ". . . tenant may not . . . avoid in any contract . . . license agreement, or similar agreement . . . any of the rights or duties or remedies . . . relating to the duties of a landlord."

Having concluded that the public policy provisions apply to license agreements involving a tenant's use of real estate and that the Booth Space Contract is a form of license or concession agreement, we conclude the first predicate for the application of OCGA § 13-8-2 (b) has pertinency.

Addressing the second threshold question discussed in *Smith*: Does the indemnification agreement seek to exculpate NCW for its sole negligence? Though the words of the indemnification do not expressly refer to NCW's sole negligence, the logic is irrefutable that the

agreement sought to indemnify NCW from any and all claims (which necessarily includes claims emanating from injuries caused solely by NCW's negligence) made by any employee or agent of the exhibitor. Similar language was contained in a contract between the City of Albany and the Inner-City Authority and which was the subject of a suit between a claimant and the City of Albany. The lease in that case provided: "The City shall indemnify and save the Authority and Trustee harmless against and from all claims by and on behalf of any person, firm or corporation arising from the contract." *Frazer v. City of Albany*, supra at 402. (Emphasis deleted.) The Supreme Court held the provision seeking to exculpate all claims was void as contrary to public policy. See *Camp Concrete Prods. v. Central of Ga. R. Co.*, 134 Ga. App. 537 (215 SE2d 299).

This being a license or concession agreement dealing with the use of real estate which included an attempt to exculpate NCW from all claims including those arising exclusively from its own, sole negligence, we find no error in the action of the trial court finding the exculpatory clause to be in violation of public policy, void and unenforceable. There thus was no error in the dismissal of NCW's third-party action against Chipurnoi.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED OCTOBER 23, 1986.

*Thurbert E. Baker*, for appellant.
*Palmer H. Ansley, C. Bradford Marsh*, for appellee.