Craven WATSON, Plaintiff,

v.

UNION CAMP CORPORATION,
Defendant/Third Party
Plaintiff,

v.

PIPING SYSTEMS, INC. and Richard
Barrow, Third Party Defendants.

No. CV493–124.

United States District Court,
S.D. Georgia,
Savannah Division.

Aug. 22, 1994.

Noble L. Boykin, Jr., Savannah, GA, for plaintiff.

Francis S. Exley, Savannah, GA, for Union Camp.

George L. Lewis, Savannah, GA, for Piping Systems and Barrow.

## ORDER AND MEMORANDUM

NANGLE, District Judge.

Before the Court are several motions for summary judgment relating to the third-party action between defendant/third-party plaintiff Union Camp Corporation ("Union Camp") and third-party defendants Piping Systems, Inc. ("PSI") and Richard Barrow: (1) Union Camp's motion for partial summary judgment on the issue of indemnity; (2) PSI and Barrow's cross-motion for partial summary judgment on the issue of indemnity; and (3) PSI and Barrow's motion for summary judgment on the issue of release. Union Camp seeks a holding from the Court that PSI and Barrow must indemnify Union Camp from liability in the instant action pursuant to a construction contract between Union Camp and PSI and a release agreement between Union Camp, PSI, and Richard Barrow. PSI and Barrow request a holding that a separate release agreement relieves them from the duty to indemnify Union Camp, or, alternatively, that the indemnification provisions in these documents are invalid. Because the Court finds that the separate release agreement relieves PSI and Barrow from any indemnification obligations to Union Camp, it will grant summary judgment in favor of the third party defendants.[1]

## FACTUAL BACKGROUND

In 1993, plaintiff Craven Watson, an employee of PSI, filed an action to recover for injuries allegedly sustained in an explosion that occurred on May 10, 1991 at the Union

---

1. The Court's grant of summary judgment to the third-party defendants on the issue of release renders moot the parties' cross-motions for summary judgment on the validity of the indemnification provisions. The Court, however, will ad-

Camp plant in Savannah, Georgia.[2] At the time of the accident, Watson was working on the Union Camp premises under an agreement labelled "Construction Contract" between Union Camp and PSI (the "contract") as part of an odor abatement project at the plant. The contract required PSI to install a "vent collection system" at the plant, involving, among other things, demolishing an existing storage tank and piping and installing prefabricated tanks and piping. (Contract Ex. A at 1.) Union Camp contends that the explosion involving Watson resulted from the failure of PSI employees or subcontractors to comply with Union Camp rules and practices, in breach of a provision in the contract requiring PSI to "[c]ause its employees, agents and subcontractors to comply with Union Camp's plant rules and practices while such persons are upon any premises of Union Camp." (Contract at 5 ¶ 7(d)(3).)

Union Camp asserts that PSI should indemnify it for any liability incurred in this action, along with costs and attorney fees, pursuant to an indemnification provision of the contract. That provision reads, in full:

11. *Indemnification:*

Contractor at all times will indemnify, release, protect, defend and hold Union Camp harmless from and against any and all loss, liability, expenses, claims, or demands arising from personal injury (including death at any time resulting therefrom), property damage, or damage of whatever nature to any person, including Contractor or Union Camp, occurring as a direct or indirect result of, or in any manner connected with the performance of this Contract, whether such injury or damage shall be caused by the acts, omissions or negligence of Contractor, Contractor's employees, Contractor's subcontractors, or employees of any of Contractor's subcontractors hereunder and Contractor shall at its expense defend any and all actions based thereon and shall pay all charges of attorneys and all costs and other expenses arising therefrom.

(Contract at 7 ¶ 11.)

Union Camp further seeks indemnification from both PSI and Richard Barrow under a release agreement dated March 27, 1992 (the "PSI release"). In this agreement, PSI and Barrow discharge Union Camp from all claims arising out of the construction contract, waive any subrogation rights against Union Camp, and agree "to protect, defend and indemnify and hold Union Camp Corporation harmless from and against any claims" connected with the construction contract. (PSI Release at 1.)

PSI and Barrow respond that the indemnification provisions of the construction contract and the PSI release are invalid under Georgia law. They further respond that a second release agreement, signed by Union Camp and dated March 27, 1992 (the "Union Camp release"), prevents Union Camp from pursuing any claims arising out of the May 10, 1991, accident at the Union Camp plant. The Union Camp release discharges PSI and Barrow from "any and all claims ... from any act or occurrence up to the present time, and particularly on account of all property damage, loss suffered, or damages of any kind sustained as a result of an accident that occurred on or about the 10th day of May, 1991." (Union Camp Release at 1.) PSI and Barrow request that the Court grant summary judgment in their favor on the basis of the Union Camp release.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment only when the pleadings, depositions, and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence and any inferences that may be drawn from it in the light most favorable to the nonmovant. *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985). If the party seeking summary judgment identifies grounds demonstrating the absence of a genuine issue of material fact,

---

dress the issue of these provisions' validity to the extent needed in its analysis of the release issue.

2. Watson has since settled his claim against Union Camp.

the nonmovant must go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Thompson v. Metropolitan Multi-List, Inc.,* 934 F.2d 1566, 1583 n. 16 (11th Cir.1991), *cert. denied sub nom. DeKalb Bd. of Realtors, Inc. v. Thompson,* — U.S. —, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992).

## II. THE UNION CAMP RELEASE IS VALID AND DISCHARGES THE INDEMNIFICATION OBLIGATIONS OF PSI AND BARROW

On March 27, 1992, Union Camp signed a general release that discharged PSI from liability for "any and all claims ... arising from any act or occurrence up to the present time, and particularly on account of all property damage, loss suffered, or damages of any kind sustained as a result of [the] accident." (Union Camp Release at 1.) PSI and Barrow contend that, as a matter of law, this release relieves them from any liability arising from the accident involving Craven Watson. The Court agrees.

### A. General rules of contract interpretation in Georgia.

General rules of construction governing ordinary written contracts also govern releases. *U.S. Anchor Mfg. v. Rule Indus.,* 264 Ga. 295, 443 S.E.2d 833, 835 (1994); *Thomaston v. Fort Wayne Pools,* 181 Ga. App. 541, 352 S.E.2d 794, 795 (1987). In Georgia, the interpretation of a contract is ordinarily a question of law. O.C.G.A. § 13–2–1; *Sakas v. Jessee,* 202 Ga.App. 838, 415 S.E.2d 670, 672 (1992). When interpreting a contract, a court must determine: (1) whether the contract is ambiguous; and (2) whether applicable rules of construction remove the ambiguity. *Smith v. Seaboard Coast Line R.R. Co.,* 639 F.2d 1235, 1239 (5th Cir. Unit B Mar. 1981) (per curiam)[3]; *Travelers Ins. Co. v. Blakey,* 255 Ga. 699, 342 S.E.2d 308, 309 (1986) (per curiam); *Tidwell v. Car-*

roll *Builders,* 251 Ga. 415, 306 S.E.2d 279, 281 (1983). "Construction of written contracts, even if they are ambiguous, is a matter for the court and no jury question arises unless after application of applicable rules of construction the ambiguity remains." *Chalkley v. Ward,* 119 Ga.App. 227, 166 S.E.2d 748, 754 (1969); *see also, e.g., Smith v. Seaboard Coast Line,* 639 F.2d at 1239; *Blakey,* 342 S.E.2d at 309; *Hardin v. Great N. Nekoosa Corp.,* 237 Ga. 594, 229 S.E.2d 371, 373 (1976); *Archer v. Carson,* 213 Ga.App. 161, 444 S.E.2d 82, 84 (1994); *Andrews v. Skinner,* 158 Ga.App. 229, 279 S.E.2d 523, 525 (1981).

In Georgia, "[t]he cardinal rule of [contract] construction is to ascertain the intention of the parties." O.C.G.A. § 13–2–3; *Head v. Hook,* 248 Ga. 818, 285 S.E.2d 718, 719 (1982). The contract itself provides the only evidence of the parties' intent, *Paige v. Jurgensen,* 204 Ga.App. 524, 419 S.E.2d 722, 723 (1992), but a court may determine whether a contract is ambiguous as to intent. *Archer,* 444 S.E.2d at 84; *Kusuma v. Metametrix, Inc.,* 191 Ga.App. 255, 381 S.E.2d 322, 323 (1989). A court may not, however, impose upon unambiguous language a different meaning to comport with the drafter's claimed intent, or use extrinsic evidence to create an ambiguity in an otherwise unambiguous contract. O.C.G.A. § 24–6–1; *Stewart v. KHD Deutz of Amer., Corp.,* 980 F.2d 698, 702 (11th Cir.1993); *Paige,* 419 S.E.2d at 723; *Emerson v. Cousins Mtg. & Equity Invs.,* 145 Ga.App. 883, 244 S.E.2d 890, 894 (1978). "[N]o construction of the contract is required **or even permissible** when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." *Sakas,* 415 S.E.2d at 673 (emphasis added); *see also Reuss v. Time Ins. Co.,* 177 Ga.App. 672, 340 S.E.2d 625, 626 (1986).

### B. The Union Camp release and the PSI release, read together, are ambiguous as to the scope of the third-party defendants' obligations.

The Union Camp release, read alone, appears to relieve PSI and Barrow from any

---

**3.** The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v.* *City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

liability connected with the accident at issue in this action, including liability for Watson's claim, which Watson filed after the parties signed the release. Under Georgia law, a general release will discharge a party from liability for tortious acts of which the parties were unaware when they executed the release, so long as the release clearly expresses that intent. *U.S. Anchor,* 443 S.E.2d at 835. The Union Camp release expresses such an intent: It refers to "all claims" and applies to "all unknown and unanticipated damages or loss resulting from the said accident, ... as well as to damage or loss now known or disclosed." (Union Camp Release at 1.) Georgia courts have interpreted "all claims" language broadly to include unknown conduct. *See Glover v. Southern Bell Tel. & Tel. Co.,* 229 Ga. 874, 195 S.E.2d 11, 11–12 (1972) (contrasting general release, barring any cause of action, with "a release that by its terms relates solely to designated property damage"); *Aetna Cas. & Surety Co. v. W.G. Lothridge Contracting Co.,* 163 Ga.App. 731, 296 S.E.2d 83, 83 (1982) (holding release of "all claims" does not limit itself to claims to which it specifically refers). The "all claims" language in the Union Camp release thus extends to Watson's claim and appears to relieve PSI and Barrow from any liability in connection with Watson's action.

■ Union Camp, however, has presented the Court with a second release signed March 27, 1992, the PSI release, that creates an ambiguity when read alongside the Union Camp release. A court may not use extrinsic evidence to vary the terms of or otherwise render ambiguous a written contract. *E.g.,* O.C.G.A. § 24–6–1; *Citizens & S. Trust Co. (Ga.), N.A. v. Johnson,* 201 Ga.App. 464, 411 S.E.2d 543, 544 (1991); *see also Kusuma,* 381 S.E.2d at 323 ("Ambiguity cannot be created merely by ingenuity of counsel.") A court, however, should read and construe together two contemporaneous instruments executed as part of the same transaction. *Ameritrust Co., N.A. v. White,* 848 F.Supp. 1001, 1004 (N.D.Ga.1994); *Hardin,* 229 S.E.2d at 374; *Rizk v. Jones,* 243 Ga. 545, 255 S.E.2d 19, 20 (1979) (per curiam); *B & C Tire & Battery, Inc. v. Cooper Tire & Rubber Co.,* 212 Ga. App. 228, 441 S.E.2d 468, 469 (1994); *Georgia Highway Express, Inc. v. United Parcel Serv.,* 164 Ga.App. 674, 297 S.E.2d 497, 498 (1982). The Union Camp release and the PSI release both concern the allocation of liability between the parties and were executed on the same day; the Court, therefore, will read these releases together and will consider them as a single contract in determining whether an ambiguity exists.

■ The meaning of the PSI release and the Union Camp release is ambiguous when the two releases are read together. "[A] word or phrase is ambiguous only when it is of uncertain meaning and may be fairly understood in more ways than one." *Dorsey v. Clements,* 202 Ga. 820, 44 S.E.2d 783, 787 (1947); *see also Walton v. Datry,* 185 Ga. App. 88, 363 S.E.2d 295, 300 (1987) (quoting *Dorsey* ); *Tarbutton v. Duggan,* 45 Ga.App. 31, 163 S.E. 298 (1932) (describing ambiguous contract as duplicitous, indistinct, and uncertain). The Union Camp release and the PSI release contain directly contradictory language. While the Union Camp release extinguishes any liability of PSI or Barrow towards Union Camp, the PSI release obligates PSI and Barrow "to protect, defend and indemnify and hold Union Camp Corporation harmless from and against any claims ... arising out of or connected with ... the above-referenced contract whether ... based on contract, tort, or other theory of liability." (PSI Release at 1.) This conflicting language casts an ambiguity upon whether PSI and Barrow have an obligation to indemnify Union Camp. *Cf. CMS Indus. v. L.P.S. Int'l, Ltd.,* 643 F.2d 289, 294 (5th Cir. Unit B Apr. 1981) (finding intent unclear where contemporaneous contracts contained directly conflicting provisions).

## C. The terms of the Union Camp release govern since the PSI release is void under Georgia law.

■ The Court need not resolve the ambiguity created by the direct conflict between the PSI release and the Union Camp release, however, since the indemnification provision of the PSI release is void under Georgia law. Public policy in Georgia prohibits contracts related to the construction or maintenance of a building that purport to

indemnify a party for that party's sole negligence. O.C.G.A. § 13–8–2(b); *see also Smith v. Seaboard Coast Line,* 639 F.2d at 1242; *Kemira, Inc. v. A–C Compressor Corp.,* 755 F.Supp. 1059, 1069–70 (S.D.Ga. 1991); *National Candy Wholesalers, Inc. v. Chipurnoi, Inc.,* 180 Ga.App. 664, 350 S.E.2d 303, 304 (1986). The PSI release states:

> Piping System Inc. [sic] and Richard Barrow, individually, ... agree to protect, defend and indemnify and hold Union Camp Corporation harmless from and against any claims, demands, or causes of action by any person or entity arising out of or connected with, directly or indirectly, the above-referenced contract whether such claim, demand or cause of action is based on contract, tort, or other theory of liability.

(PSI Release at 1.) The Court finds that the PSI release falls squarely within the public policy prohibition of section 13–8–2(b).[4]

The PSI release pertains to the maintenance or construction of a building. In Georgia, the definition of a "building" varies according to the particular facts and statutory language at issue. *Randall v. Atlanta Advertising Serv.,* 159 Ga. 217, 125 S.E. 462 (1924). Section 13–8–2(b) extends to contracts "relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith." O.C.G.A. § 13–8–2(b). The indemnification provision of the PSI release relates to the construction contract between Union Camp and PSI, which covers work involved in installing a vent collection system at the plant. This work includes demolishing an existing tank and piping, installing new tanks and piping, erecting steel platforms, stairs, ladders, and grating, and excavating and constructing concrete foundations, (Contract Ex. A at 1), and clearly

pertains to appurtenances and appliances connected with a building, if not to a building itself. *See* Black's Law Dictionary (6th ed. 1990) (defining "appurtenance" as an adjunct, appendage, or annexation, likened to "an outhouse, barn, garden, or orchard").

The Court further finds that the indemnification provision of the PSI release purports to shield Union Camp from liability for its sole negligence. Two conflicting lines of authority exist in Georgia concerning the extent to which a contract must express an intent to indemnify a party against his sole negligence to be in violation of section 13–8–2(b) or its predecessor, Ga.Code Ann. § 20–504. *See Morgan v. Westinghouse Elec. Corp.,* 579 F.Supp. 867, 869–70 (N.D.Ga.1984), *aff'd,* 752 F.2d 648 (11th Cir.1985). Numerous decisions of the Georgia Court of Appeals have refused to hold that the parties to an indemnification agreement intended to protect each other against their own sole negligence absent clear indication to the contrary. *E.g., Batson–Cook Co. v. Georgia Marble Setting Co.,* 112 Ga.App. 226, 144 S.E.2d 547, 552 (1965); *see also Buffington v. Sasser,* 184 Ga.App. 800, 363 S.E.2d 2, 6 (Ga.App.1987) (refusing to find indemnification provision referring to "any and all liabilities" void under section 13–8–2(b), since "[i]t does not expressly apply to damage caused by [indemnitee's] own negligence"); *Seaboard Coast Line R.R. Co. v. Union Camp Corp.,* 145 Ga.App. 417, 243 S.E.2d 631, 633 (1978) (finding it "quite obvious" that indemnification against "any and all loss" did not extend to indemnitee's own negligence). Furthermore, the Georgia Court of Appeals has held that an indemnification provision functionally identical to the one at issue did not purport to indemnify a party from his sole negligence. *See Georgia State Tel. Co. v. Scarboro,* 148 Ga.App. 390, 251 S.E.2d 309, 310

---

**4.** Section 13–8–2(b) states:

> A covenant, promise, agreement or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, *purporting to* indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable, provided that this subsection shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer.

O.C.G.A. § 13–8–2(b).

(1978) (interpreting provision that read: "The contractor shall save harmless the telephone company from and indemnify it against **all claims** and suits for injury or damage **to any person** or property whatsoever, including death, **which may arise in or result from the performance of the work covered by this contract.**" (emphasis added)).

The Georgia Supreme Court, however, has held that the phrase "any claim" includes claims for the indemnitee's sole negligence, even if the agreement does not expressly cover sole negligence. *Frazer v. City of Albany*, 245 Ga. 399, 265 S.E.2d 581, 583 (1980). The *Frazer* court considered two provisions of a lease agreement:

> Section 6.9 of the lease provides: "The City shall indemnify and save the Authority and Trustee harmless against and from *all claims* by and on behalf of any person, firm or corporation arising from the contract or management of or from any work or thing done on the project during the Lease term ..."

> Section 8.1 of the proposed lease says: "The City releases the Authority from, agrees that the Authority shall not be liable for, and agrees to hold the Authority harmless against any loss or damage to property, or any injury to or death of any person that may be occasioned by *any cause whatsoever* pertaining to the project or the use thereof ..."

*Id.* Although the lease provisions did not expressly protect the indemnitee from its sole negligence, the *Frazer* court found that the provisions violated Ga.Code Ann. § 20–504, which preceded O.C.G.A. § 13–8–2. *Id.* While not expressly overruling the earlier line of appeals court decisions, the *Frazer* holding has spawned a separate line of appeals court decisions in direct conflict with the earlier cases. *See, e.g., Borg–Warner Ins. Fin. Corp. v. Executive Park Ventures*, 198 Ga.App. 70, 400 S.E.2d 340, 341 (1990)

(finding "all liability" provision purported to waive indemnitee's liability for its sole negligence), *cert. granted and appeal dismissed*, 405 S.E.2d 876 (Ga.1991); *Chipurnoi*, 350 S.E.2d at 305 (finding "all claims" language "necessarily includes claims emanating from injuries caused solely by [indemnitee's] negligence"); *Big Canoe Corp. v. Moore & Groover, Inc.*, 171 Ga.App. 654, 320 S.E.2d 564, 565 (1984) (holding "all claims" language to be "clearly violative" of section 13–8–2(b)).

The Court finds no meaningful difference between the "all claims" language used in the indemnification provision of the PSI release and the language used in the contract held invalid by the Georgia Supreme Court in *Frazer*, a decision binding upon this Court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Court therefore finds that the PSI release violates the public policy expressed in O.C.G.A. § 13–8–2(b) by impermissibly sanctioning the indemnification of Union Camp's sole negligence in a contract pertaining to the construction or maintenance of a building or its appurtenances.

The invalidity of the PSI release's indemnification provision resolves the ambiguity between the PSI release and the Union Camp release. While a court must construe an ambiguous contract to be lawful and valid if possible, *Bragg v. Household Fin. Corp.*, 140 Ga.App. 75, 230 S.E.2d 55, 57 (1976), in the instant case the Court is faced with two conflicting provisions, one valid and the other clearly invalid. The Court will reject the invalid provision, thereby eliminating the ambiguity. *Cf. CMS Indus.*, 643 F.2d at 295 (finding one of two contemporaneously-executed contracts to be void.)

Without the ambiguity created by the PSI release, the Union Camp release clearly discharges PSI and Barrow from their obligation to indemnify Union Camp under the construction contract.[5] The Court may not consider extrinsic evidence altering or con-

---

5. The Court notes that the indemnification provision found in the construction contract likely does not violate O.C.G.A. § 13–8–2(b), since it contains language limiting its scope to "injury or damage ... caused by the acts, omissions or negligence of Contractor, Contractor's employees, Contractor's subcontractors, or employees of any of Contractor's subcontractors hereunder." (Contract at 7 ¶ 11.) *See Westinghouse Elec. Co. v. Williams*, 183 Ga.App. 845, 360 S.E.2d 411, 413 (1987) (requiring strict construction of indemnification agreements against indemnitee); *Molly Pitcher Canning Co. v. Central of Ga. Ry. Co.*, 149 Ga.App. 5, 253 S.E.2d 392, 395 (1979)

tradicting this unambiguous language. O.C.G.A. § 24–6–1; *Sakas,* 415 S.E.2d at 673; *Paige,* 419 S.E.2d at 723. As a result, no genuine question of material fact exists, and it is appropriate for the Court to grant summary judgment in favor of PSI and Barrow. Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment on the issue of release filed by the third-party defendants be and is **GRANTED.**

**IT IS FURTHER ORDERED** that the third-party complaint be and is **DISMISSED** with prejudice.

---

(same). The contract's validity, however, does not affect the validity of the subsequent Union Camp release, discharging PSI and Barrow from any duty to indemnify Union Camp under the contract.