A08A1588. AMERIS BANCORP v. ACKERMAN.
(674 SE2d 358)

DOYLE, Judge.

This interlocutory appeal arises from Janet Ackerman's suit to recover money she paid Ameris Bancorp (the "Bank") as a guarantor on a note. Following the denial of its motion for judgment on the pleadings, the Bank contends that the trial court erred by failing to enforce certain exculpatory clauses in the guaranty and a related lease agreement. For the reasons that follow, we disagree and affirm.

"On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings, and we construe the complaint in a light most favorable to the appellant, drawing all reasonable inferences in his favor."[1]

> When deciding a motion for judgment on the pleadings, the issue is whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. All well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false.[2]

So viewed, the record shows that, in 1985, to finance the construction of a veterinary clinic, the City of Cairo Development Authority (the "City") borrowed $130,000 from the Bank[3] and executed a note obligating it to make monthly payments toward the

---

[6] *Davita*, supra at 96 (1).

[1] (Punctuation omitted.) *Haldi v. Piedmont Nephrology Assoc.*, 283 Ga. App. 321, 322 (641 SE2d 298) (2007).

[2] (Punctuation omitted.) *Mills v. Allstate Ins. Co.*, 288 Ga. App. 257 (653 SE2d 850) (2007).

[3] The note and related documents actually were executed by the Bank's predecessor,

principal plus interest based on an adjustable rate over a 20-year term. The same day, the City executed a lease entitling Ackerman[4] to occupy the premises of the new veterinary clinic as lessee and obligating her to make monthly lease payments to the City in an amount equal to the amount due under the note. The lease likewise obligated the City to promptly deliver the payment to the Bank (as payment for the note). In connection with the lease, Ackerman executed a separate two-page guaranty obligating her to make the note payments and pay any balance remaining at maturity if the City failed to pay. Also, as part of the lease, Ackerman obtained an option to purchase the property (for an amount equivalent to the balance due under the note plus $1)[5] at or prior to expiration of the lease, which followed the same 20-year term as the note. Finally, the City assigned its interest in the lease to the Bank, so Ackerman was essentially making lease payments to the Bank directly, in an amount equal to the debt on the note. The Bank retained a security deed securing the note.

After the transaction closed, Ackerman began adequately performing her obligation to make lease payments as billed and when due. Over time, however, the Bank failed to adjust the amount due each month in accordance with the variable interest rate on the note. Because the applicable interest rate fluctuated, there remained a stated unpaid balance of $26,306.62 on the date of the maturity of the note. After the Bank demanded payment, Ackerman ultimately paid the Bank $27,106.12 (accounting for interest on the late payment) under protest.

Ackerman sued the Bank for breach of contract and money had and received, alleging that the $26,306.62 figure represents principal that wrongly went unpaid because more of her monthly payments went to interest than should have occurred under the terms of the note. Relying on language in the guaranty and lease, the Bank unsuccessfully moved for judgment on the pleadings, and this Court granted the Bank's application for interlocutory appeal.

The Bank contends that, regardless of any mistake in the billing by the Bank, Ackerman's claims against the Bank fail due to language limiting her claims in her guaranty of the note and her lease with the City (which was assigned to the Bank). We disagree.

---

Cairo Banking Company, but the Bank's status as successor is neither challenged nor relevant to our analysis. Therefore, for purposes of this appeal, we refer to both the predecessor and the successor as the "Bank."

[4] Although the executed documents in this case refer to Ackerman by her former name, her identity is not at issue, and we use the name by which she identified herself in her pleadings.

[5] The option price also included certain "permitted encumbrances" such as liens.

1. *Enforceability of the exculpatory language in the lease.* The lease executed by Ackerman contains "Release and Indemnification Covenants" she agreed to as part of the lease agreement with the City, which assigned its interest to the Bank. The Bank argues that Ackerman's claims are barred by this language, which provides, in relevant part:

> If the [Indemnified Persons are] made a party defendant to any litigation concerning the Project or any part thereof, or concerning the occupancy thereof by Lessee [Ackerman], or concerning the issuance of the Note, the Lessee agrees to indemnify, defend and hold Indemnified Persons harmless from and against any and all liability by reason of such litigation. . . .

> It is the intention of the parties that the Indemnified Persons shall not incur pecuniary liability by reason of the terms of this Lease or by reason of the undertakings of the Indemnified Persons required hereunder in connection with the issuance of the Note or execution of this Lease, the Security Deed, or the Lease Assignment or in connection with the performance of any act by the Indemnified Persons requested by the Lessee or in any way arising from the transaction with which this Lease is a part arising [sic] in any manner in connection with the Project or financing of the Project; nevertheless, if any of the Indemnified Persons should incur any such pecuniary liability, then in such event the Lessee shall indemnify and hold the Indemnified Persons harmless against all claims by and on behalf of any person arising out of the same. . . .

> The provisions of this section shall not apply to any claim of liability resulting from the acts of gross negligence, bad faith, fraud or deceit of any of the Indemnified Persons, or for any claim or liability which the Lessee was not given the opportunity to contest.

The lease defined Indemnified Persons to include the City and its successors and assigns, so the Bank became an Indemnified Person upon assignment.

As this exculpatory language is in a lease, our focus here is on the law governing exculpatory clauses in such documents. "As a general rule a party may contract away liability to the other party for the consequences of his own negligence without contravening public

policy, . . . except when such an agreement is prohibited by statute.''[6] This Court has held that OCGA § 13-8-2 (b) (now and as written at the time of this contract) applies to exculpatory clauses in lease contracts[7] and

> unequivocally holds that a covenant, promise, agreement or understanding with reference to the construction and maintenance of a building or other structure "purporting to indemnify or hold harmless the [landlord] against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the [landlord], his agents or employees or indemnitee is against public policy and is void and unenforceable.''[8]

Here, the indemnity broadly states that "Lessee shall indemnify and hold the Indemnified Persons harmless against all claims by and on behalf of any person arising out of'' the terms of the lease "or in any way arising from the transaction.''

> Though the words of the indemnification do not expressly refer to [the Bank's] sole negligence, the logic is irrefutable that the agreement sought to indemnify [the Bank] from any and all claims (which necessarily includes claims emanating from injuries caused solely by [the Bank's] negligence). . . .[9]

This attempt to "shift[ ] all liability . . . no matter the origin of the claim or who is at fault,'' violates the public policy of the State of Georgia as expressed in OCGA § 13-8-2 (b).[10] It is therefore void and unenforceable.

That the indemnity provision here, as a matter of fact, is not invoked specifically against liability for damage arising out of bodily injury or damage to property does not render the exculpatory provision enforceable. The provision as written is violative of OCGA

---

[6] (Punctuation omitted.) *Lanier at McEver, L.P. v. Planners & Engineers Collaborative*, 284 Ga. 204, 205 (1) (663 SE2d 240) (2008).

[7] See *Frazer v. City of Albany*, 245 Ga. 399 (2) (265 SE2d 581) (1980); *Barnes v. Pearman*, 163 Ga. App. 790, 792 (294 SE2d 619) (1982); *Nat. Candy Wholesalers v. Chipurnoi, Inc.*, 180 Ga. App. 664, 666 (350 SE2d 303) (1986).

[8] *Big Canoe Corp. v. Moore & Groover, Inc.*, 171 Ga. App. 654, 657 (1) (320 SE2d 564) (1984). See Ga. L. 1970, p. 441, § 1; Ga. L. 1982, p. 3, § 13.

[9] *Nat. Candy Wholesalers*, 180 Ga. App. at 666-667.

[10] *Lanier at McEver, L.P.*, 284 Ga. at 206 (2). See also *Federated Dept. Stores v. Superior Drywall & Acoustical*, 264 Ga. App. 857, 859-860 (1) (592 SE2d 485) (2003); *Frazer*, 245 Ga. at 401-402; *Nat. Candy Wholesalers*, 180 Ga. App. at 667.

§ 13-8-2 (b) and as such is void by the terms of that Code section. A void provision "is wholly ineffective, inoperative, and incapable of ratification and . . . thus has no force or effect so that nothing can cure it."[11] Therefore, assuming no other bar to recovery, "notwithstanding the exculpatory clause in the lease agreement, [the Bank can be] liable for any damages incurred by [Ackerman] as a proximate result of [the Bank's] ordinary negligence."[12]

2. *Enforceability of the exculpatory provision in the guaranty.* Ackerman also challenges the effect of exculpatory language in a guaranty executed along with the lease and note, in which she guaranteed payment of the note as follows:

> The obligations covered by this guaranty include all the obligations of the [City] to the Bank now existing or hereafter coming into existence in connection with the Project and of renewals or extensions, in whole or in part, of any such obligations, together with all damages, losses, costs, interest charges, expenses and liabilities of every kind, nature and description suffered or incurred by the Bank, arising in any manner out of or in any way connected with, or growing out of such obligations.

The guaranty also contained the following, set off in a separate paragraph:

> The Guarantor hereby waives notice of acceptance of this guaranty or of the creation or extension or renewal of any obligation of the [City] to which it relates, or of any default by the [City]. Guarantor agrees that no act or omission on the part of the Bank shall in any way affect or impair this guaranty.

Despite the above exculpatory language, in the context of the instant action, the scope of this guaranty is dispositive. In essence, the guaranty applies to obligations of the City to the Bank under the note "together with" any liabilities arising out of those obligations. However, Ackerman's suit is premised on an alleged miscalculation by the Bank which ultimately resulted in overpayment under the terms of the note. Therefore, as Ackerman seeks to recover money she alleges the Bank was not due (nor was the City obligated to pay) under the terms of the note, such money cannot be an obligation of

---

[11] Black's Law Dictionary 1573 (6th ed. 1990).

[12] *Burson v. Copeland*, 160 Ga. App. 481, 482 (2) (287 SE2d 386) (1981). See also *Nat. Candy Wholesalers*, 180 Ga. App. at 667.

the City, and any liability of the Bank for that money does not "arise" or "grow" out of the City's obligation (or Ackerman's obligation under the guaranty).

> A contract of guaranty or suretyship is primarily one to pay the debt of another which may be due and payable by the principal debtor to the creditor upon default. The contract of suretyship is one of strict law; and the surety's liability will not be extended by implication or interpretation.[13]

Accordingly, we do not interpret the guaranty as obligating Ackerman to pay alleged overage wrongfully collected by the Bank.

We emphasize that we do not opine on the merit of Ackerman's underlying claims, but as the appeal is from a decision on a motion for judgment on the pleadings, we construe the allegations in Ackerman's complaint and draw all reasonable inferences in her favor. To the extent Ackerman's claims are for money neither she nor the City was obligated to pay under the guaranty or note, any exculpatory clause in the guaranty does not reach the claims here.

In light of the holdings herein, the trial court did not err in denying the Bank's motion for judgment on the pleadings.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 24, 2009 ▮

*Moore, Clarke, DuVall & Rodgers, James H. Moore III, Allen H. Olson*, for appellant.
*Kevin T. Butler*, for appellee.

---

[13] (Citation and punctuation omitted.) *Roswell Festival, L.L.L.P. v. Athens Intl.*, 259 Ga. App. 445, 448 (2) (576 SE2d 908) (2003).