## 41763. QUINN v. CARDIOVASCULAR PHYSICIANS, P. C. et al.

(326 SE2d 460)

WELTNER, Justice.

A physician sued a professional corporation and her two former associates for breach of her employment contract, for specific performance of the contract, for tortious interference with contractual rights, and for misappropriation of business opportunity. She sought also injunctive relief, declaratory judgment, and accounting. The trial court granted the defendants' motions for summary judgment as to all counts except those seeking accounting.

In April 1982, Quinn, Lipsitt, and Unterman — all of whom are physicians — formed Cardiovascular Physicians, P. C. as equal shareholders. In June 1982, and on behalf of the professional corporation, Quinn negotiated a one-year contract with the Gwinnett County Hospital Authority, whereby the corporation would provide cardiology services to the Authority.

Five months later, Quinn was given written notice of a meeting of shareholders and directors, which was called for the purpose of terminating her status as an officer and employee of the corporation. Quinn informed Unterman and Lipsitt that she considered the notice tantamount to discharge, and on January 6, 1983, tendered her resignation as an officer and director, to be effective immediately. At the same time, she indicated that she wished to continue working as an employee under the Hospital Authority agreement. Neither Unterman nor Lipsitt responded, and Quinn performed no further work for the corporation.

Early in 1983, the three shareholders attempted to settle all issues among them. This effort failed when Unterman and Lipsitt conditioned any settlement upon Quinn's agreement that she would not practice medicine in Gwinnett County. Unterman and Lipsitt refused to allocate to her any portion of the corporation's accounts receivable, which had mounted to $138,475 in December 1982.

Quinn filed suit on January 17, 1983 for failure to pay salary, for breach of contract, and for an accounting. She amended her complaint to include claims for specific performance, injunctive relief, in-

terference with contract, declaratory judgment, and appointment of an auditor.

On June 28, 1983, Unterman and Lipsitt resolved to terminate all the activities of Cardiovascular Physicians, P. C. They formed a second corporation, Cardiovascular Group, P. C., and, through their offices as directors and shareholders of the first corporation, transferred all assets of the first corporation to the new corporation. Quinn received no notice of any of these matters.

On August 1, 1983, the new corporation signed a contract for services with the Gwinnett County Hospital Authority. Throughout this time, Unterman and Lipsitt remained as officers and directors of the first corporation.

Between July and November of 1983, the first corporation paid Unterman and Lipsitt over $68,000 each, in addition to monthly salaries which were twice as much as Quinn's former salary. These transfers were termed "officer bonuses" and "windup pay." The first corporation also paid the second corporation $10,000, called "overhead expenses." As a result of these and other actions, the cash position of the first corporation was reduced in a two-month period from over $91,000 to less than $8,000.

Quinn received no payment of any kind.

She thereafter amended her complaint, once again, to include counts for misappropriation of business opportunity and violation of fiduciary duties.

1. OCGA § 14-7-3 provides: "A professional corporation and the shareholders of the corporation in their capacity as shareholders shall enjoy the rights, privileges, and immunities and shall be subject to the obligations and liabilities of other corporations organized for profit under Chapter 2 of this title and those of the shareholders of such corporations." While a professional corporation and its principals labor under some limitations not inherent to other profit-making enterprises, at minimum they must adhere to general corporate requirements. See *First Bank &c. Co. v. Zagoria*, 250 Ga. 844 (302 SE2d 674) (1983).

2. It is settled law that corporate officers and directors occupy a fiduciary relationship to the corporation and its shareholders, and are held to the standard of utmost good faith and loyalty. *King Mfg. Co. v. Clay*, 216 Ga. 581 (118 SE2d 581) (1961). OCGA § 14-2-152 requires that "[d]irectors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

The demand of good faith is not limited to corporate profitability, but extends to the rightful interests of minority shareholders, as well. "Directors may decide in good faith what is best for the corpora-

tion, but this interest must be consistent with good faith to the minority stockholder." *Comolli v. Comolli*, 241 Ga. 471, 475 (246 SE2d 278) (1978). Good faith "requires that the stockholders be treated fairly and that their investments be protected [because] [i]n close corporations, minority stockholders may easily be reduced to relative insignificance and their investment rendered captive." *Comolli*, supra at 474.

3. OCGA § 14-2-153 provides in part: "(a) An action may be brought by a [shareholder] against one or more directors or officers of a corporation to procure for the benefit of the corporation a judgment for the following relief:

"(1) To compel the defendant to account for his official conduct or to decree any other relief called for by his official conduct in the following cases:

"(A) The neglect of, failure to perform, or other violation of his duties in the management of the corporation or in the disposition of corporate assets committed to his charge;

"(B) The acquisition by himself, transfer to others, loss, or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties; and

"(C) *The appropriation, in violation of his duties, of any business opportunity of the corporation.* (Emphasis supplied.)

The business opportunity principle, as set out in Subsection 14-2-153 (a) (1) (C), is but specie of the command that fiduciaries act with undivided loyalty, and is another manifestation of the requirement of utmost good faith.

" '[I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself.' " *Miller v. Miller*, 301 Minn. 207 (222 NW2d 71, 79) (1974), 77 ALR3d 941, 955.

In *Southeast Consultants v. McCrary Eng. Corp.*, 246 Ga. 503 (273 SE2d 112) (1980), we held that OCGA § 14-2-153 (a) (1) (C) "precludes acquisition by corporate officers of the property of a business opportunity in which the corporation has a 'beachhead' in the sense of a legal or equitable interest or expectancy growing out of a preexisting right or relationship." Id. at 508.

The first corporation's twelve-month contract with the Hospital Authority was a business relationship upon which might be based a realistic and substantive expectation of its renewal, continuation, or extension. Hence, there is a genuine factual issue as to whether this

was a business opportunity.

4. Unterman and Lipsitt contend that there was no business opportunity to be appropriated, because the first corporation became unable to provide cardiovascular services to the Hospital Authority. From a review of the record, we note that a jury might find that this claimed inability was nothing more than the result of the refusal by Unterman and Lipsitt to perform medical services on behalf of the first corporation. "The term 'business opportunity' . . . should be broad enough to encompass reality." *United Seal &c.Co. v. Bunting,* 248 Ga. 814, 817 (285 SE2d 721) (1982) (dissent). A jury might find that, through means of such refusal, Unterman and Lipsitt purposefully destroyed the expectation of renewal which rightfully belonged to the first corporation — all in violation of their duty to it and to Quinn as minority shareholder. Summary judgment as to this count was improper.

5. A fiduciary's duty of good faith prohibits him from appropriating for himself the assets and property of the corporation, to the exclusion of minority shareholders. *Comolli,* supra. Under OCGA § 14-2-153 (a) (1) (B), a shareholder may bring an action to compel the officer to account for "[t]he acquisition by himself, transfer to others, loss, or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties."

It is well-settled that corporate actions which effect radical change — such as transfer of all assets, or liquidation — must be taken with scrupulous loyalty to the interests of minority shareholders. See Henn, Law of Corporations, § 240 (2d ed. 1970). A jury might find that the transfer of all the assets of the first corporation to the new corporation was, in effect, a transfer to Unterman and Lipsitt, and made in bad faith.

6. OCGA § 14-2-231 provides: "A sale, lease, exchange, or other dispositon of all or substantially all the property and assets of a corporation . . . shall be authorized in the following manner:

"(1) The board of directors shall adopt a resolution recommending such sale, lease, exchange, or other dispostion specifying, to the extent that the board sees fit, any or all of the terms and conditions thereof and the consideration to be received by the corporation therefor and directing the submission thereof to a vote at a meeting of shareholders, which may be either an annual or a special meeting;

"(2) *Written notice shall be given to each shareholder* of record, whether or not entitled to vote at such meeting, *not less than 20 days before such meeting* . . . and shall state that the purpose or one of the purposes is to consider the proposed sale, lease, exchange or other disposition. The notice shall fairly summarize the material features of the proposed transaction and shall contain a clear and concise statement that, if the sale, lease, exchange, or other disposition is effected,

shareholders dissenting therefrom are entitled, if they file a written objection to such transaction before the vote of the shareholders is taken thereon and comply with the further provisions of Code Section 14-2-251 regarding the rights of dissenting shareholders, to be paid the fair value of their shares." (Emphasis supplied.)

On June 28, 1983, Unterman and Lipsitt met as directors and adopted the following resolution: "RESOLVED, that the Corporation commence to wind down its affairs since the prospects appear poor for a negotiated settlement of the lawsuit between Dr. Quinn and the Corporation." It was at this meeting that they determined to transfer all corporate assets to the second corporation, and to pay "officer bonuses" of $48,000. Thereafter, *all* corporate assets were alienated. All of this was done in secret; Quinn was notified of nothing.

The purpose of OCGA § 14-2-231 is to inform dissenting shareholders of their rights with regard to the proposed transaction. See Comment, OCGA § 14-2-231 (Michie, 1983). Had Quinn been notified as required, she could have exercised her right to dissent under OCGA § 14-2-250, which provides that a "shareholder of a corporation shall have the right to dissent from any of the following actions . . . . (2) Any sale, lease, exchange, or other disposition of all or substantially all the property and assets of the corporation." With such a dissent, she would have been entitled to the "fair value of her shares." OCGA § 14-2-251 (d).

Thus, a jury might determine that Unterman and Lipsitt pirated away all the assets of the first corporation, leaving Cardiovascular Physicians, P. C. but an empty shell, and Quinn's shares in it but a scrap of paper — all in violation of their duties of good faith. The trial judge's denial to Quinn of a jury trial on count ten (which we deem to be the equivalent of a grant of partial summary judgment) was improper.

7. Unterman and Lipsitt refused to pay to Quinn the salary she had earned prior to her termination. There is conflicting testimony as to her entitlement to any bonus. Genuine questions of fact exist as to the bonus issue, and the grant of summary judgment was improper.

8. Quinn claims that Unterman and Lipsitt tortiously interfered with her employment contract with the first corporation, and with her expectation concerning the Hospital Authority work. Quinn's employment was terminable at will, and she lawfully might be discharged without cause. *Elliott v. Delta Air Lines, Inc.* 116 Ga. App. 36 (156 SE2d 656) (1967).

The Hospital Authority contract was with Cardiovascular Physicians, P. C., and nothing in it bestowed rights upon shareholders or employees of the corporation. The fact that Quinn might somehow benefit from the contract does not make her a third party beneficiary. *LDH Properties, Inc. v. Morgan Guaranty Trust Co. of N. Y.,* 145

Ga. App. 132 (243 SE2d 278) (1978).

The grant of summary judgment as to this count is affirmed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED FEBRUARY 27, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Webb & Daniel, Harold T. Daniel, Jr., Laurie Webb Daniel,* for appellant.

*McCauley, Owens & Sweeney, Timothy J. Sweeney,* for appellees.