RELIANCE INSURANCE COMPANY
OF ILLINOIS, INC., Plaintiff,

v.

RICHFIELD HOSPITALITY
SERVICES, INC.,
Defendant.

No. CIVA1:98CV3607A–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 23, 2000.

James Dartlin Meadows, Meadows, Ichter & Trigg, Atlanta, GA, for plaintiff.

Arthur H. Glaser, Self, Glaser & Davis, Atlanta, GA, Richard I. Metzger, Drew, Eckl & Farnham, Atlanta, GA, for defendant.

### ORDER

CARNES, District Judge.

This case is presently before the Court on plaintiff's Motion for Summary Judgment [16], defendant's Motion for Summary Judgment [23], and defendant's Motion for Leave to File a Reply Brief [24]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Leave to File a Reply Brief [24] should be **GRANTED,** defendant's Motion for Summary Judgment [23] should be **GRANTED,** and plaintiff's Motion for Summary Judgment [16] should be **DENIED.**

## BACKGROUND

Plaintiff in this action seeks damages for breach of contract, prejudgment interest, and expenses of litigation arising out of a service agreement between a hotel and a security guard company. Plaintiff is a commercial insurance company that issued a Commercial General Liability Insurance Policy (hereinafter the "Policy") to the security guard company, Weiser Security Services, Inc. (Joint Stipulation of Undisputed Facts [16] at ¶ 1.) Defendant is a hotel management company that managed the Comfort Inn–Atlanta Airport hotel, located in College Park, Georgia. (Id. at ¶ 2.) On April 5, 1994, Weiser and Richfield executed a Service Agreement (hereinafter the "Service Agreement"), pursuant to which Weiser agreed to provide security guard services at the hotel. (Id. at ¶ 3.)

Marsha Thijssen was an employee of defendant working at the Comfort Inn. (Id. at ¶ 6.) While working on the night of December 12, 1994, Ms. Thijssen was attacked by an intruder while responding to a call for room service. (Id.) She was injured in the attack and received worker's compensation benefits through her employer's workers compensation program as a result of the injuries. (Id.) In October 1996, Ms. Thijssen filed a lawsuit against Weiser, styled *Marsha Thijssen v. Weiser Security Services, Inc. and Christopher Gray*, Civ.A. No. 96–VS–0118792 (Fulton County State Court filed Oct., 1996) (hereinafter the "Thijssen suit"). (Id. at ¶ 5.) The Thijssen suit alleged in part that Weiser's negligence and breach of the Service Agreement caused Ms. Thijssen's injuries, and she sought substantial damages, including punitive damages from Weiser. (Id. at ¶ 7.) Pursuant to the Policy, plaintiff assumed the defense of Weiser. (Id. at ¶ 8.)

During the course of litigation, Ms. Thijssen demanded $1 million from Weiser to settle the suit. (Id. at ¶ 9.) As a result of mediation, the suit eventually settled for $190,000. (Id. at ¶ 10.) On September 24, 1997, Ms. Thijssen executed a Release and Indemnity Agreement in favor of Weiser. (Id. at ¶ 11.) During the course of the Thijssen suit, Reliance incurred reasonable attorney's fees and expenses totaling $33,492.34. (Id. at ¶ 13 .) Reliance requested that Richfield either assume the defense of Weiser or indemnify Weiser and Reliance in connection with the Thijssen suit. (Id. at ¶ 14.) Richfield has refused Reliance's requests for indemnification. (Id. at ¶ 15.)

## DISCUSSION

### I. Defendant's Motion for Leave to File Reply Brief

As an initial matter, defendant moves for leave to file out of time its reply brief in support of its motion for summary judgment. (Def.'s Mot. for Leave to File a Reply Br. in Supp. of its Summ.J.Mot. Out of Time [24].) Defendant's reply brief was due on or before October 12, 1999; defendant's counsel, however, failed to file the reply by that date and instead filed this motion with a proposed reply brief the next day, October 13. Defendant's counsel states that he "belatedly became aware of additional authorities and arguments which counsel believes the court should consider in the proper determination of the parties' pending motions for summary judgment." (Mem. in Supp. of Mot. for Leave [24] at 1.) Counsel admits that he did not contact the Court or plaintiff's counsel prior to the deadline to seek an extension. (Id.) Defendant asks this Court to find excusable neglect and allow it to file out of time for "good cause—namely, the correct determination of the issues presented in the case." (Id. at 2.) Defendant's proposed brief includes a new argument based on the "complete defense rule." (Id.)

Plaintiff opposes defendant's motion to file out of time on the grounds that defen-

dant has violated the Local Rules, that defendant has proffered no good reason why he was unable to discover this argument earlier, and that the proposed reply brief improperly raises new arguments for the first time. (Pl.'s Resp. to Def.'s Mot. for Leave [25].) Plaintiff states that it "has no objection to the Court considering the portions of Defendant's Reply Brief that address arguments previously raised and briefed." (*Id.* at 1 n. 4.) The Court therefore **GRANTS** defendant's Motion for Leave to File Out of Time as to Section 1 (pp. 1 to 8) of its Proposed Reply Brief.

■ Section Two of the Proposed Reply Brief is more problematic. In general, a court should not consider arguments raised for the first time in a reply brief. *See U.S. v. Georgia Dep't of Natural Resources,* 897 F.Supp. 1464, 1471 (N.D.Ga. 1995). Plaintiff argues that if the Court does grant defendant's motion as to Section 2, plaintiff ought to be allowed to respond to this new argument and defendant should be charged with the attorney's fees incurred in responding. Although, defendant's "complete defense" argument should have been made sooner, the Court notes that it is actually a response to an argument made by plaintiff, in its motion for summary judgement, that Weiser did not owe Thijssen a legal duty. The Court finds that another round of briefing would not be in the interest of either judicial economy or the economy of the parties. The Court is quite familiar with this doctrine, having considered the same issue in *Federal Paper Board Co. v. Harbert–Yeargin, Inc.,* 53 F.Supp.2d 1361 (N.D.Ga.1999) (Carnes, J.), and likely would have raised

the issue *sua sponte* even if defendant had not raised it.[1] The Court, therefore, will **GRANT** defendant's motion as to Section 2 as well. However, because the "complete defense" doctrine is essential to this case and plaintiff has not yet directly addressed it, the Court notifies plaintiff that it may file a motion for reconsideration as to the Court's present order to address the application of this doctrine.

## II. Cross–Motions for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's

1. Because " 'district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* as long as the losing party was on notice that she had to come forward with all of her evidence,' " the Court feels that it could have considered the issue as it relates to the parties' motions for summary judgment even if neither party had raised it. *EPL, Inc. v. USA Federal Credit*

*Union,* 173 F.3d 1356, 1362 (11th Cir.1999) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The doctrine of "complete defense" is a legal doctrine, and the parties would presumably not be required to put forth any additional evidence in support or defense of the doctrine being applied.

case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548 (quoting FED. R.CIV.P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

B. Plaintiff Is Subrogated to Weiser's Right of Indemnification Under the Service Agreement

 Although plaintiff is not a party to the Service Agreement, it seeks indemnification from defendant because it states it is subrogated to Weiser under the agreement. (Mem. of Law in Supp. of Pl.'s Mot. for Summ.J. [16] at 8–12.)

While there can be no subrogation when a party voluntarily, rather than contractually, pays the debt of another, *see Childers v. Eastern Foam Prods., Inc. .,* 94 F.R.D. 53, 56 (N.D.Ga.1982), the payment in this case was not voluntary because it was made pursuant to a settlement agreement. *See Continental Ins. Co. v. Federal Ins. Co.,* 153 Ga.App. 712, 266 S.E.2d 351, 352 (1980). Defendants have made no objection to plaintiff's subrogation argument. The Court concludes therefore that plaintiff is subrogated to Weiser's right of indemnity and, therefore, may seek indemnification under the Service Agreement.

C. Reliance's Claim for Breach of Contract

The parties are in agreement on the material facts of this case, and concur that the case turns on the legal question of whether plaintiff Reliance is entitled to recover under the Service Agreement for breach of contract. The pertinent section of the Service contract states:

WSS AGREES THAT THE SERVICES FURNISHED UNDER THIS AGREEMENT SHALL BE IN CONFORMITY WITH PRACTICES WHICH ARE GENERALLY CURRENT IN THE SECURITY GUARD INDUSTRY. THE PARTIES ACKNOWLEDGE THAT WSS DOES NOT REPRESENT AND CANNOT WARRANT THAT THE SERVICES FURNISHED WILL PREVENT OR MINIMIZE THE LIKELIHOOD OF LOSS OF PROPERTY OR BODILY INJURY. IT IS UNDERSTOOD AND AGREED BY AND BETWEEN THE PARTIES THAT: WSS IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CLIENT; THE CONTRACTOR IS BEING PAID HEREUNDER FOR A GUARD SYSTEM DESIGNED TO DETER CERTAIN RISKS OF LOSS AND THAT ALL AMOUNTS BEING

CHARGED HEREUNDER BY THE CONTRACTOR ARE NOT SUFFICIENT TO GUARANTEE THAT NO LOSS WILL OCCUR. WSS'S RESPONSIBILITY IS SOLELY LIMITED TO PROVIDING PHYSICAL SECURITY AND WSS HAS NOT BEEN ENGAGED AS A CONSULTANT OR OTHERWISE TO PROVIDE AN ASSESSMENT OF SECURITY NEEDS AT THE SITE(S) COVERED. *WSS SERVICES SHALL NOT GIVE RISE TO OR CONFER ANY RIGHTS ON ANY THIRD PARTY, AND CLIENT AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS WSS AGAINST ANY CLAIMS BY THIRD PARTIES.* WSS AGREES TO INDEMNIFY CUSTOMER FOR ALL DAMAGES TO CLIENT'S PROPERTY DUE TO THE GROSS NEGLIGENCE OF WSS OR ITS EMPLOYEES.

(Pl.'s Mot. for Summ.J. [16] at Ex. B. at ¶ 7.) (emphasis added). The parties are in disagreement, however, about the application of this clause to the case at hand. Their disagreement turns on three issues: (1) whether Ms. Thijssen is a third party under the terms of the Service Agreement; (2) whether the agreement contains clear, precise, and unambiguous language indicating an intent to provide indemnity for Weiser's negligent acts; and (3) assuming the contract does not cover Weiser's negligent acts, whether Weiser did indeed act negligently. The Court addresses each issue in turn.

### 1. Ms. Thijssen Is a Third Party Under the Service Agreement

Under the service agreement, defendant agrees to indemnify plaintiff against any claim brought by third parties. Defendant submits that this agreement is unclear on whether employees of the defendant are encompassed in the term "third party" or are instead beneficiaries of the contract who would be excluded from the class of claimants for which defendant agreed to provide indemnification. (Def.'s Mot. for Summ.J. [23] at 12–13.) Because the Service Agreement does not address whether employees are third parties, defendant reasons that the contract is ambiguous and any ambiguities are to be construed against plaintiff, the indemnitee. (*Id.*)

Plaintiff responds that the fact that Ms. Thijssen was an employee is irrelevant to her status as a third party, citing *Quinn v. Cardiovascular Physicians, P.C.,* 254 Ga. 216, 326 S.E.2d 460, 465 (1985), and *Burton v. DeKalb County,* 209 Ga.App. 638, 434 S.E.2d 82, 83–84 (1993). (Pl.'s Resp. to Def.'s Mot. for Summ.J. [18] at 14.) In *Quinn,* the Georgia Supreme Court stated that "the fact that [an employee] might somehow benefit from the contract does not make her a third party beneficiary." *Quinn,* 254 Ga. at 220, 326 S.E.2d at 465. In *Burton,* the court of appeals held that "the fact that plaintiff is an employee of one of the parties to the contract, without more, does not evince the requisite intent to make plaintiff a beneficiary to the contract." *Burton,* 209 Ga.App. at 638, 434 S.E.2d at 83.

■ Accordingly, the Court concludes that the term "third party" is unambiguous and includes all persons not a party to the contract.[2] Moreover, there is no indication that the term as used in the Service Agreement was meant to exclude defendant's employees working at the Comfort Inn. Indeed, there are only two groups of people who would likely ever file a claim against the hotel's security company: the hotel's guests or its employees. Ms. Thijssen, therefore, is a third party and

---

**2.** Black's Law Dictionary defines "third party" as "[o]ne not a party to an agreement, a transaction, or an action but who may have rights therein." BLACK'S LAW DICTIONARY 1479 (6th ed.1991).

her lawsuit involved a claim by a third party. Accordingly, defendant potentially has a duty to indemnify plaintiff against her claim.

#### 2. The Service Agreement Does Not Contain Clear and Express Language that it Provides Indemnification For Weiser's Acts of Negligence

The first question in interpreting this agreement is whether the parties agreed that defendant would indemnify plaintiff for any acts of negligence by plaintiff that gave rise to a claim by a third party. The service agreement provides that defendant shall "indemnify, defend and hold harmless" the plaintiff as to "any claims" by third parties. A reasonable, common-sense reading of the language leads to the firm conclusion that "any claim" means just what is says and includes a claim based on a theory of negligence. Indeed, there would appear to be no other kind of claim that a third party guest or employee would likely bring against a security company that provided security to a hotel.

 The above reasoning notwithstanding, under the line of Georgia authority that appears to be applicable to this case, "[i]t is well established ... that contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered." *Allstate Ins. Co. v. City of Atlanta*, 202 Ga.App. 692, 693, 415 S.E.2d 308, 310 (1992) (quoting *Southern R. Co. v. Union Camp Corp. .*, 181 Ga.App. 691, 692, 353 S.E.2d 519, 520 (1987)). "The words of the contract will be scrutinized closely to discover whether such an intent is actually revealed ... and every presumption is against such intention. In the absence of explicit language to the contrary, courts will not interpret an indemnity agreement as a promise by the indemnitor to save the indemnitee harmless on account of the latter's own negligence." *Allstate*, 202 Ga. App. at 693, 415 S.E.2d at 309 (quoting *Batson–Cook Co. v. Georgia Marble Setting Co.*, 112 Ga.App. 226, 230, 144 S.E.2d 547, 550 (1965); *Georgia State Tele. Co. v. Scarboro*, 148 Ga.App. 390, 391, 251 S.E.2d 309, 310 (1978)).

In short, this line of Georgia authority ignores the plain language of a contract calling for indemnity for "any claim" and, instead, requires explicit language in the contract calling for indemnification for claims arising out of the negligence of indemnitee. Although not addressed by the parties, as noted by this Court in *Federal Paper*, there is another line of Georgia cases addressing "the extent to which a contract must express an intent to indemnify a party against his sole negligence." *Federal Paper*, 53 F.Supp.2d at 1371. Quoting Judge Nagle's decision in *Watson v. Union Camp Corp.*, 861 F.Supp. 1086, 1091 (S.D.Ga.1994), this Court noted that, in a different situation, the Georgia Supreme Court has held that "the phrase 'any claim' includes claims for the indemnitee's sole negligence, even if the agreement does not expressly cover sole negligence. *Frazer v. City of Albany*, 245 Ga. 399, 265 S.E.2d 581, 583 (1980)." *Federal Paper*, 53 F.Supp.2d at 1371. *Frazer* and its progeny making up this "other line of cases," however, are inapplicable to the present case because they all address sole negligence in terms of O.C.G.A. § 13–8–2, which is not applicable to a contract providing for security guards.[3] Moreover, even if applicable, this line of authority still, for the most part, prevents indemnification for the negligent acts of the indemnitee, for while, with one hand, this author-

---

**3.** § 13–8–2 applies, for the most part, to construction and maintenance contracts. Indeed, neither party has alleged that the statute applies to the present case and the Court concludes that a contract for security guards falls outside of the albeit broad scope of the statute.

ity holds that "any claim" includes a claim for negligence, with the other hand, these cases disallow indemnification for the negligent acts of an indemnitee as a matter of public policy.[4]

Therefore, the indemnitee who believes he has protected himself with an agreement calling for indemnification for "any claim" is actually in a "catch–22" situation in Georgia in many instances. Under the first line of Georgia authority, the absence of an explicit acknowledgment in the contract that "any claim" includes a claim of negligence dooms the indemnitee's hope for indemnification when it is liable based on its own negligence. Under the line of authority that holds that "any claim" can include a claim of negligence, however, the indemnitee loses because Georgia "public policy" disallows indemnification for claims of negligence. As most suits against an indemnitee—and certainly most suits against a security company for a hotel—are going to proceed on a claim of negligence, these two lines of Georgia authority effectively outlaw the whole concept of indemnification in many situations [5] and deprive the parties of their bargain.

Indeed, while the goal of the above lines of authority was presumably to protect an unwary indemnitor from an obligation to be responsible for another party's negligence,[6] the result produced here illustrates the potential for some unintended consequences that are not always in the best interest of the public. Leaving aside the potential for this application of Georgia law to ambush many unsuspecting indemitees,[7] the ultimate ramification, in many instances, will be to deny a small vendor or sub-contractor the needed protection which it believes itself to have obtained through the promised indemnification by the company with whom it has contracted to work. This case is a good example of the potential for that phenomenon. A security guard company presumably lacks the resources of a large hotel chain. Moreover, an employee of the hotel who is assaulted while on the job will often get substantially less compensation from her employer, through its worker's compensation program, than she feels her injuries warrant. Looking for another defendant to make her whole, and assuming that few assaulters have the proverbial deep pocket, the employee will have only one other potential defendant: the security company. Given that potential scenario, it is understandable that a security company would seek an indemnity agreement from the hotel chain. Indeed, without such an agreement, the specter of potential dam-

---

**4.** An exception to this "public policy" preclusion of indemnification for negligence occurs when the indemnitor has purchased insurance to cover the indemnity agreement. *Federal Paper*, 53 F.Supp.2d at 1373–76.

**5.** Again, in a § 13–8–2 situation, the contract can proceed as written if the indemnitor has purchased indemnity insurance.

**6.** In arriving at a public policy to protect the unwary, it is difficult to know which party will be the entity that needs protection from its own bargain. On the one hand, the *Allstate Insurance Company* line of cases envisions an indemnitor who might be caught unawares when it later learns that it has agreed to indemnify a party for the latter's own negligence. With the confusing state of the law, however, one could also envision a trusting indemnitee who believes that he has secured protection from an indemnitor who,

all the while, knows full well that the indemnity agreement that he has made will not hold up under Georgia law.

**7.** Certainly, one could argue that plaintiff should have realized that it needed to put the magic word, "negligence," in its agreement with defendant. As indicated in this Order and in the *Federal Paper* order, however, deciphering Georgia law on the interplay between claims of negligence and indemnity agreements is no easy feat. The Court has some sympathy for a small business entity or individual who has entered into a clearly worded indemnity agreement that he believes protects him, only to discover, when he needs that protection, that Georgia law purportedly promoting the public good deprives him of his bargain.

ages resulting from successful law suits might well require the security company to greatly increase its rates; increased security guard rates discourage hotels from having security guards; and the absence of security guards results in greater danger to hotel guests and employees. None of the above seems to yield a good result.

■ In short, because the Service Agreement here does not contain the explicit language required by the Georgia Court of Appeals before an indemnification clause can cover negligent acts by the indemnitee, this Court reluctantly concludes that the contract of indemnification does not cover such acts. Therefore, if Weiser was negligent, plaintiff is not entitled to indemnification under the agreement for damages arising as a result of that negligence.

### 3. Was Weiser Negligent?

Plaintiff, concedes, as it must, that Georgia law requires an indemnification agreement to explicitly state that it covers acts of negligence by the indemnitee. (Pl.'s Resp. to Def.'s Mot. for Summ.J.[18] at 3.) This concession forces plaintiff to argue that, as pertains to the Thijssen claim, Weiser was not negligent. Plaintiff bases this contention on two grounds. First, although there is no Georgia law on point, plaintiff asserts that an allegation of negligence in the underlying lawsuit is insufficient to infer negligence for purposes of indemnification. (*Id.* at 4–9.) Second, plaintiff contends that as a matter of law, Weiser could not have been adjudicated negligent because it owed no duty to Ms. Thijssen. (*Id.* at 10–13.)

■ Addressing the first issue, the parties indicate that Georgia courts have not spoken on the issue of whether mere allegations of negligence in the underlying dispute are sufficient to establish negligence for indemnification purposes. Texas has adopted the view that when a claim is based on negligence, there can be no indemnification unless the indemnification agreement explicitly refers to negligence. *See Fisk Elec. Co. v. Constructors & Assocs., Inc.,* 888 S.W.2d 813, 815–16 (Tex. 1994) ("Without an express reference in the indemnification provision to claims based upon negligence, there is no indemnity for defense costs incurred in connection with a negligence claim irrespective of whether the claim is ultimately proved."). In a similar vein, North Dakota has held that, in the absence of an express negligence clause, an indemnitee may not recover attorney's fees and costs incurred in defending a negligence claim. *See Barsness v. General Diesel & Equip. Co.,* 422 N.W.2d 819 (N.D.1988) (no indemnification for attorney's fees or costs where indemnitee adjudicated 2% negligent).

The more accepted view of indemnification for negligence, however, is that the Court should look to the actual facts rather than just the allegations made in determining whether the indemnitee was negligent and therefore barred from receiving indemnification. *See e.g., INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.,* 150 Ariz. 248, 722 P.2d 975, 980–81 (App.1986); *Pike Creek Chiropractic Center, P.A. v. Robinson,* 637 A.2d 418, 421 (Del.1994); *Insurance Co. of N. Am. v. King,* 340 So.2d 1175, 1176 (Fla.Dist.Ct.App.1976); *Piedmont Equip. Co. v. Eberhard Mfg. Co.,* 99 Nev. 523, 665 P.2d 256, 259–60 (1983); *Pullman Standard Inc. v. Abex Corp.,* 693 S.W.2d 336 (Tenn.1985). Although none of these cases are factually identical, they all speak to the same general principle that a mere allegation of negligence is insufficient to bar an indemnitee from seeking indemnification. This Court concurs with that conclusion and therefore proceeds to an analysis of plaintiff's negligence in connection with Ms. Thijssen's assault.

Looking first only to the issue of responsibility for the damages paid to Ms. Thijss-

en, as opposed to responsibility for the costs of defending her law suit, plaintiff argues that Weiser was not negligent and that it settled the Thijssen suit "for business reasons."[8] The Court does not have to decide the question whether Weiser was actually negligent, however, because Weiser had a "complete defense" to Thijssen's claim, was therefore under no obligation to make the settlement payment, and is not entitled to indemnification.

### 4. Doctrine of "Complete Defense"

 "Under Georgia law, if a party seeking to be indemnified had a complete defense to the underlying action, then a claim for indemnification cannot be maintained." *Federal Paper*, 53 F.Supp .2d at 1366 (citing *Foster v. Nix*, 173 Ga.App. 720, 327 S.E.2d 833 (1985).) In *Federal Paper*, this Court determined that under Georgia law, the term "complete defense" means a defense as a matter of law. Order of June 5, 1998,[9] at 22–31; *Federal Paper Bd. Co. v. Harbert–Yeargin, Inc.*, 97–CV–0449A–JEC (N.D.Ga.1999) (Carnes, J.); *Federal Paper Bd. Co. v. Harbert–Yeargin, Inc.*, 53 F.Supp.2d 1361, 1376–79 (N.D.Ga.1999) (Carnes, J.). Therefore, when a reviewing court is determining whether an indemnitee had a

complete defense to a claim that the indemnitee settled before trial, the court does not have to speculate as to what a jury might have done nor does the court have to convene a mock jury to gauge the latter's assessment of the indemnitee's liability. Instead, the court must merely determine whether the indemnitee had a defense as a matter of law; that is, whether, when taking the facts in the light most favorable to the party suing the indemnitee, could the latter have been granted a summary judgment. Although plaintiff has objected to that part of defendant's reply brief that discusses the "complete defense" issue, it is actually plaintiff who first brought up the issue of whether, as a matter of law, Weiser could have been found liable to Thijssen. (Mem. of Law in Supp. of Pl.'s Mot. for Summ.J. [16] at 17.) *See supra* at 1332. Specifically, in its motion for summary judgment, plaintiff states,

> In looking beyond the bare allegations in Ms. Thijssen's Complaint, it is obvious that Weiser was not negligent as to Ms. Thijssen because Weiser owed no legal duty to Ms. Thijssen upon which negligence could have been based. Ms. Thijssen's negligence claim, therefore, had *absolutely no merit and would have failed as a matter of law.*

---

8. While $190,000 is a large settlement payment to make if there truly was no fault on the part of Weiser, the Court does not discount plaintiff's concerns that even though it was confident that it had the winning legal argument, it could not be sure that a Fulton County jury or court would necessarily agree. *See, e.g.* Ben Schmitt, " 'Horseplay' Ends with $1M Verdict for Psychologist Injured in Attack," FULTON COUNTY DAILY REP., Nov. 9, 1999, at Al, which reported the award of one million dollars in a Fulton County case with analogous facts. *See, infra* p. 24 (attached as Appendix I).█

9. This June 5, 1998 Order, which was not published, deals more thoroughly with the

"complete defense" doctrine than does the published Order of July 9, 1999, which touched on the complete defense principle, but primarily dealt with other issues. *See, supra* pp. 1332. Although the thrust of the discussion in the earlier 1998 order indicated that a "complete defense" should mean a defense as a matter of law, not an argument that could be made before a jury, this Order reached no firm conclusion, as it assumed that the parties had stipulated otherwise. Upon further briefing, the parties expressed disagreement on this matter and the Court ruled, in the published 1999 order, that a "complete defense" meant a defense as matter of law. 53 F.Supp.2d at 1376–79. Because the earlier unpublished 1998 order dealt at greater length with the ramifications of the issue than did the published order, however, the pertinent pages of that earlier order are attached as Appendix II to this case.

"It is axiomatic that an action for negligence cannot be maintained if the defendant did not owe the plaintiff a legal duty." *Armor Elevator Co. v. Hinton,* 213 Ga.App. 27, 443 S.E.2d 670, 672 (1994). A legal duty can arise by operation of law or by contract between the parties. *See id.,* 443 S.E.2d at 672. "In most instances, a person owes no legal duty to assist or warn another person who is or may be in danger." *Id.* There was no relationship between Ms. Thijssen and Weiser that would have conferred a duty by operation of law on Weiser's part. In addition, Weiser did not voluntarily assume any legal duty particularly to Ms. Thijssen that would give rise to her for negligence in this situation.

Furthermore, since Ms. Thijssen was a third party to the Service Agreement, Weiser did not owe her a legal duty under the Service Agreement. For a third party to have standing to sue under a contract, it must clearly appear from the contract that it was intended for her benefit. *Id.* As the *Armor Elevator* court stated, "in personal injury cases, an injured party may not recover as a third-party"

(*Id.* at 17.) (emphasis added).

In the case cited by plaintiff—*Armor Elevator Co. v. Hinton,* 213 Ga.App. 27, 443 S.E.2d 670 (1994)—the plaintiff, a patron at Tower Place in Atlanta, fell and was injured when she stepped out of an elevator that had stopped approximately three feet above the ground floor. Among the defendants was PSI Security, the security guard company contracted by the operator and manager of Tower Place to provide security. Plaintiff alleged that PSI was liable "because it failed to warn her that the elevator was malfunctioning." *Id.* at 27, 443 S.E.2d 670. PSI moved for summary judgment, which the trial court denied, but the court of appeals reversed. In ruling that PSI was not liable to plain-

tiff as a matter of law, the court of appeals reviewed the basic precepts of negligence law in Georgia:

It is axiomatic that an action for negligence cannot be maintained if the defendant did not owe the plaintiff a legal duty. In most cases, a person owes no legal duty to assist or warn another person who is or may be in danger. . . .

However, a legal duty can arise not only by operation of law but by a contract between the parties. And "it is well established that breach of contractual duty can give rise to an action for damages for personal injuries. . . .

'With regard to third-party beneficiaries the rule is well established: "In order for a third party to have standing to enforce a contract under [O.C.G.A. § 9–2–20(b) ] it must be clear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. It follows that, '[i]n personal injury cases, an injured party may not recover as a third party beneficiary for failure to perform a duty imposed by contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a benefit upon the plaintiff to protect him from physical injury. . . .' "

*Id.* at 29–30, 443 S.E.2d at 672–73 (citations omitted). Examining the contract between PSI and the management company, the court of appeals concluded that the parties did not intend for patrons to be third-party beneficiaries. Because there was no contractual obligation, PSI had no duty to warn or assist the plaintiff and, therefore, it should have been granted summary judgment. *Id.*

 Similarly, the Service Agreement in the present case indicates no intention to benefit third party beneficiaries. Although *Armor Elevator* is not factually

identical to the present case,[10] it was plaintiff, not defendant, who first argued that it applies and would have barred a successful suit by Ms. Thijssen. The Court concludes that *Armor Elevator* is sufficiently on point to have provided a complete defense to Weiser in the Thijssen suit. The settlement payment made by plaintiff, therefore was voluntary, and plaintiff has no right to indemnification for the damages it paid to Ms. Thijssen.

Having so concluded, the Court again recognizes the legal "catch–22's" that have confronted plaintiff in seeking to vindicate its contract of indemnity with defendant and the substantial practical issues that plaintiff earlier faced in attempting to defend the claim bought by Ms. Thijssen. That is, forced here to deny any negligence in the case brought by Ms. Thijssen, because Georgia law holds that an indemnity agreement that covers "any claim" does not cover a claim of negligence, plaintiff's denial of any negligence dooms its chances of recovering on the indemnity agreement for two reasons, First, plaintiff must show the existence of a viable claim before it can show that its settlement of that claim was reasonable. As negligence was the only possible theory, the absence of any negligence suggests that plaintiff settled a case for which it had no liability. Second, the existence of a winning legal defense—that plaintiff bore no duty to defendant's employee, under an analogy to *Armor*—likewise dooms plaintiff's chances of success at receiving indemnification in this case.

Yet, the fact that plaintiff settled with Ms. Thijssen for $190,000 is powerful evidence that plaintiff was not certain that it would prevail, either as a matter of law or before a jury. Had plaintiff guessed wrong in its belief that it owed no legal duty to Ms. Thijssen or in its belief that a Fulton County jury would accept its argument that it was not negligent, plaintiff could have been looking at a much larger damage figure than just $190,000. Indeed, a Fulton County jury recently awarded one million dollars to a visitor to a downtown office building who was stabbed while entering the building through a back alley and who sued the guard service, arguing that the guard on duty had acted negligently in not preventing the assault. *See Turaids v. Barton Protective Servs.*, Civ. A. No. 97–VS–0133053J (Fulton County State Ct. Nov. 5, 1999); Ben Schmitt, " 'Horseplay' Ends with $1M Verdict for Psychologist Injured in Attack," FULTON COUNTY DAILY REP., Nov. 9, 1999, at A1. The defendant in that case would presumably have had the same argument as the plaintiff in this case: that the security guard service did not owe a duty to the visitor. Yet, that argument did not save the defendant in *Turaids* from a one million dollar verdict.

Thus, it is this very real uncertainty about the likely success of its legal or factual arguments that prompts a rational defendant-indemnitee in a law suit to settle.[11] Indeed, in this Court's experience, the dispute between plaintiff and defendant over who should pay the damages or

10. *Armor Elevator* involved a patron at Tower Place while the present case involves an employee. While plaintiff could argue that the Service Agreement was meant to benefit employees such as Ms. Thijssen, it has already argued that Ms. Thijssen was a third-party and not a beneficiary to the agreement. *See supra* Section II.C.1.

11. One could argue that the prudent indemnitee should never settle the suit brought against him by a third party before the former's summary judgment motion has been

adjudicated. Indeed, defendant notes here that plaintiff had a summary judgment motion pending against Ms. Thijssen at the time it mediated and ultimately settled the case with her for $190,000. (*See* Pl.'s Mot. for Summ .J. [16] at Ex. A. at RR00027.) Again, however, while that suggestion seems wise in hind-sight, in reality, a defendant may wish to settle before a ruling on its summary judgment motion, as a denial of the motion will typically cause a plaintiff, who is thereby assured of a jury trial, to increase her demand for an amount of money to settle the case.

defend the suit is a scenario that repeats itself in most cases and that typically requires an after-the-fact untangling of the impact of an indemnification agreement on a case that has already been settled by the indemnitee. Specifically, the indemnitor usually refuses to become involved in defending the law suit, in settlement negotiations, or certainly in paying any part of the resulting settlement. Then, after the settlement, when the indemnitee asks for indemnification under the indemnification agreement, the indemnitor begins complaining that the indemnitee had a great case and was foolish to settle. The Court in the indemnification case is then not only required to decipher Georgia law on indemnity agreements, but is also asked to second-guess the wisdom of the indemnitee's decision to settle the law suit. Clearly, some solution by the Georgia legislature or clarification by Georgia courts would be helpful.[12] Until that happens, however, the above scenario will likely be repeated over and over again.

Nevertheless, for the above reasons, plaintiff cannot receive indemnification from defendant for the $190,000 in damages it paid to Ms. Thijssen. Accordingly, the Court **GRANTS** defendant's Motion For Summary Judgment to the extent that defendant contends that it owes plaintiff no reimbursement for the damages it paid to Ms. Thijssen; it **DENIES** plaintiff's Motion For Summary Judgment, to the same extent.

5. Indemnification For Costs Incurred by Plaintiff In Defending The Thijssen Litigation

■ Although defendant may escape any indemnity obligations for the damages

paid to defendant's employee in this case, the Court concludes that defendant is liable for the costs incurred by plaintiff in defending the Thijssen suit, which costs totaled $33,492.34. Turning again to the indemnification agreement, the latter provides that defendant agrees "to indemnify, defend and hold harmless [the plaintiff] against any claims by third parties." *Supra* at 1333–34. This provision thus required defendant to "indemnify" plaintiff for any damages that it had to pay to a third party for the latter's claims and "to defend" plaintiff against any such claims.

As discussed *supra,* at 1335–36, defendant does not have to indemnify plaintiff for damages resulting from plaintiff's own negligence, because the indemnity agreement did not explicitly indicate that it covered plaintiff's negligent acts, as required by Georgia law. Thus, this Court's reading of Georgia law prompts a conclusion that the latter rewrites the parties' contract only to the extent necessary to preclude indemnity based on the indemnitee's negligent acts. That is, one goes behind the complaint of the third party to determine whether the indemnitee was actually negligent. The fact that the third party may have alleged negligence as a claim in its complaint is not dispositive, however. Otherwise, the *allegations* of a third party, over which the indemnitee has no control, as opposed to the indemnitee's acts, for which the latter *is* responsible, would determine the resolution of the indemnification agreement. See *supra* at 1338.

Defendant has successfully argued that, as a matter of law, plaintiff was not liable

---

Moreover, the *Armor Elevator* case notwithstanding, plaintiff's uncertainty about prevailing on its summary judgment motion does not appear totally unreasonable as the same Fulton County State Court that would have ruled on this motion presided over a similar case in which one million dollars in damages were awarded.

12. A statutory mechanism allowing an indemnitee to bring a declaratory judgment action against the indemnitor and allowing a stay of the underlying litigation might be helpful. Perhaps, joinder of the indemnitor in the underlying action would be useful. The parties have not briefed this issue, however, and perhaps there is some mechanism available under existing Georgia law that is simply not being utilized by indemnitees.

to Thijssen under a negligence theory for plaintiff's acts, because plaintiff owed no duty to Ms. Thijssen. Hence, defendant's position is that because plaintiff was not liable to Ms. Thijssen under a negligence theory and because negligence was the only theory in Ms. Thijssen's claim against plaintiff, plaintiff had no liability to Ms. Thijssen and its ultimate settlement with her was not reasonable and thus not subject to indemnification.

The logical conclusion of defendant's position then is that Ms. Thijssen filed a non-meritorious claim against plaintiff. Under the indemnity agreement, defendant has agreed to "defend" plaintiff against claims by third parties. As defendant is freed from its indemnification obligations only to the extent that plaintiff's expenses were incurred as a result of plaintiff's negligence and, as defendant has contended successfully that plaintiff was *not* negligent, defendant must reimburse plaintiff for the costs incurred by plaintiff in defending itself against the unmeritorious claim filed by defendant's own employee.

Accordingly, the Court **DENIES** defendant's Motion For Summary Judgment to the extent that defendant contends that it owes plaintiff no reimbursement for the costs incurred by plaintiff in defending the Ms. Thijssen suit; it **GRANTS** plaintiff's Motion For Summary Judgment, to the same extent, and concludes that plaintiff is entitled to reimbursement in the amount of $33,492.34.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's Motion for Leave to File a Reply Brief [24]; it **GRANTS** defendant's Motion for Summary Judgment [23], in part, to the extent that defendant contends it owed plaintiff no reimbursement for damages paid by plaintiff in satisfaction of the Thijssen claim, but **DENIES** defendant's Motion For Summary Judgment to the extent that defendant contends that it owes plaintiff no reimburse-

ment for the costs incurred by plaintiff in defending the Thijssen suit; it **DENIES** plaintiff's Motion For Summary Judgment [16] to the extent that plaintiff contends that defendant owes plaintiff reimbursement for the damages paid by plaintiff in satisfaction of the Thijssen suit; it **GRANTS** plaintiff's Motion For Summary Judgment, to the extent that plaintiff contends it is entitled to reimbursement in the amount of $33,492.34 for its costs in defending the Thijssen suit.

The Court recognizes that plaintiff did not have an opportunity to directly address the "complete defense" argument. If plaintiff chooses to file a Motion for Reconsideration, it may address this issue therein. Moreover, as neither party focused on a distinction between defendant's duty to indemnify for damages paid to Thjissen and defendant's duty to indemnify plaintiff for expenses incurred in defending the Thjissen suit, defendant may likewise address the Court's determination of that issue in a motion to reconsider. The Court does not encourage either party to file such a motion, as the Court believes that neither motion will be successful, but it does permit the parties an opportunity to do so.